Cadematori v. Gauger.

*T. J. Rowe* for appellant.

*Edward C. Crow,* Attorney-General, *Sam B. Jeffries,* Assistant Attorney-General and *H. S. Priest* for the State.

---

## CADEMATORI, Appellant, v. GAUGER et al.

### Division Two, February 26, 1901.

1. **Separate Estate:** EXCLUSION OF HUSBAND'S INTEREST. Where the deed conveys the property in trust "for the sole and only use and benefit of the wife," the interest of the husband is thereby excluded. It is not necessary that there be a separate clause expressly excluding the interest of the husband in the property conveyed.

2. ————: CONSENT OF HUSBAND. Where there is nothing in the terms of a deed to a trustee for the wife's use, which makes it necessary to obtain the written consent of the husband before she can convey

Cadematori v. Gauger.

such equitable separate estate, it is not necessary for her to obtain such consent when she and the trustee convey the land. She is at liberty to convey it just as if she were a feme sole. He need not join with her in the conveyance.

3. **Administrator's Deed:** SHARING IN PROCEEDS: ESTOPPEL. An heir who shares in the proceeds of the sale by an administrator who sells the lands of the intestate to pay debts, and receipts to him for the share thus obtained, is estopped from asserting title to the property conveyed by the administrator's deed.

4. **Estoppel:** PLEADING. It is not necessary that the answer in eject-ment in so many words plead estoppel. If the allegations therein amount to an estoppel, estoppel may properly be made a defense.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*John M. Dickson* for appellant.

(1) The deed from Signiago to Paula Cadematori's trustee does not create a separate equitable estate in the land in her, because it in no sense excludes the interest of her husband in the property conveyed. Klenke v. Koeltge, 75 Mo. 239; Turner v. Shaw, 96 Mo. 22; Deming v. Williams, 26 Conn. 226; Huber v. Huber, 10 Ohio 371; 1 Bishop Married Women, sec. 838; Tremmel v. Kleiboldt, 75 Mo. 255. (2) If the deed from Signaigo to Paula Cadematori's trustee created in her a separate equitable estate, it did so with a restraint upon her rights of anticipation, unless she first obtained the written consent of her husband to any conveyance or sale thereof. The consent must be unequivocally expressed in writing. Habendum clause of deed; Pomeroy's Eq. Jur., sec. 1100; Pollock's Pr. Cont. (Wald's Ed.), p. 67. (3) The so-called power of attorney referred only to his property, not hers, and

Vol. 160 mo—23

hence, considering Paula's estate as a separate equitable one, which excluded her husband's marital rights, it could give her no authority to consent in his name to her own act, in respect to her own property. (4) The power of attorney, if it exists, must be strictly pursued. It refers only to his property; it does not refer to hers. Pettis County v. Gibson, 73 Mo. 502; R. S. 1889, sec. 2425. (5) The power of attorney is not under seal and is not executed or acknowledged as provided by statute. R. S. 1889, secs. 2396, 2397, 2401, 2425; Huff v. Rice, 50 Mo. 228; 1 Am. and Eng. Ency of Law (2 Ed.), p. 952; Schutze v. Bailey, 41 Mo. 69; Alt v. Stoker, 127 Mo. 466; Harris v. Sconce, 66 Mo. App. 347. (6) There can be no estoppel in this case because, first, none was pleaded; second, none was shown. The receipt of Cadematori and the statement of Coste in explanation of it at the time of signing thereof are wholly immaterial and no evidence of estoppel. Bigelow Estoppel (4 Ed.), p. 679. (7) What Mechin sold and Espenschied bought was the right, title and interest which deceased had at the time of her death, and that was what it was regardless of anything Mechin could say or do. Aubuchon v. Aubuchon, 133 Mo. 265; R. S. 1889, secs. 171, 172 and 148.

*Kehr & Tittmann* and *J. M. Holmes* for respondent.

(1) The deed to Jecko, trustee, created in Paula Cadematori a separate estate. Small v. Field, 102 Mo. 104. (2) In order to pass the fee to Theresa and Angela Cadematori, grantees of Paula Cadematori, it was not necessary for Dominic Cadematori to join, nor was it necessary that he should consent to the deed of Paula and her trustee. Turner v. Shaw, 96 Mo. 22; Green v. Sutton, 50 Mo. 186; Richeson v. Simmons, 47 Mo. 20; Silmers v. Kleeberg, 56 Mo. 196;

Kimm v. Weipert, 46 Mo. 532; Wood v. Kice, 103 Mo. 329; Ryland v. Banks, 151 Mo. 1. (3) The consent of Dominic Cadematori to Paula's deed is sufficiently shown by his power of attorney. Clague v. Washington, 42 Minn. 371; Wing v. Schramm, 79 N. Y. 619. (4) Appellant can not recover in ejectment until he has refunded the purchase money paid Paula, with interest, and the taxes paid by Paula's grantees and those holding under them. Shroyer v. Nickell, 55 Mo. 264; Valle v. Fleming, 29 Mo. 152; Jones v. Manley, 58 Mo. 559; Henry v. McKerlie, 78 Mo. 416; Schafer v. Cansey, 76 Mo. 365. (5) Appellant is estopped from disputing the title to the one-half interest in the property conveyed by Angela Cadematori's administrator. McReynolds v. Grubb, 150 Mo. 353.

BURGESS, J.—This is an action of ejectment for the possession of a lot of ground in the city of St. Louis which is known in this litigation as the Espenschied lot.

Defendant recovered judgment in the court below, and the plaintiff appeals.

The suit was originally against Charles G. Stifel, but since the appeal to this court he died, and on the sixteenth day of October, 1900, the suit was revived against the present defendants, Louis F. Gauger, Otto F. Stifel and Edwin H. Conrade, trustees under the will of said Charles G. Stifel, deceased.

The petition is in the usual form in such cases.

The answer, after a general denial, proceeds as follows:

"Defendant says that the premises in said petition mentioned were conveyed by James Signiago and Margaret, his wife, by deed dated April 19, 1861, and recorded in the recorder's office in the city of St. Louis, in book 252, page 166,

to Joseph Jecko as trustee for the sole and separate use of Paula Cadematori, mother of plaintiff, and of her heirs; that by the terms of the said conveyance the said Jecko was authorized and empowered to convey the said premises upon the written request of the said Paula Cadematori, with the consent of her husband, Dominic Cadematori; that thereafter, to-wit, on the fourth day of September, 1880, the said Dominic Cadematori, being then a resident of the Kingdom of Italy, executed and delivered to the said Paula Cadematori, a power of attorney, authorizing her, the said Paula, to act for him, the said Dominic, in any manner that she might see fit, as his attorney in fact, in, about and concerning all of his rights, interests and property of every description in the United States of America, which power of attorney is duly recorded in the recorder's office of the city of St. Louis, in book 774, page 552.

"That thereafter, to-wit, on the thirtieth day of January, 1886, the said Joseph Jecko, for both a good and a valuable consideration to the said Paula Cadematori moving, at the written request of the said Paula and with the consent of the said Dominic Cadematori as evidenced by their joining in the conveyances, the said Paula in person and the said Dominic by the said Paula as his attorney in fact, conveyed the said premises to Angela and Theresa Cadematori, daughters of the said Paula and sisters of plaintiff, which deed is recorded in the records of the city of St. Louis, in book 775, page 485.

"Further answering, defendant says that if the plaintiff has any title whatever to the premises in the petition described, he derives the same by virtue of the statute of descents and distributions, from Angela Cadematori and Paula Cadematori. That Angela Cadematori, being as aforesaid seized of an undivided one-half interest in the premises

described, died unmarried, without issue and intestate, leaving as her sole heirs two sisters and two brothers, of whom plaintiff was one. That administration was duly had upon the estate of the said Angela Cademstori, and the personal property being insufficient for the payment of the debts allowed, the administrator was duly ordered by the St. Louis Probate Court to sell the real property to the said estate belonging, to-wit, the undivided one-half of the premises in the petition described, for the payment of debts. That in pursuance of said order the said administrator did, on Monday, the twenty-third day of November, 1891, sell the said property at public vendue in accordance with the terms of said order, having first advertised the time, terms and place of said sale, by a notice published in the Star Sayings, a newspaper published in the city of St. Louis, Missouri, which notice was first published on the twenty-sixth day of October, 1891, and was published once a week thereafter, the last publication being on the sixteenth day of November, 1891. That at said sale the said property was bought by F. F. Espenschied, at and for the price and sum of $1,228.50, which sum was, to-wit, on the said twenty-third day of November, 1891, duly paid by the said Espenschied to the said administrator, and the said sale was duly approved by the said St. Louis Probate Court. That all of the sum so received by the said administrator for the said premises was used by him in the payment of debts allowed against the said estate, save the sum of $284, which sum was, upon the final settlement of said estate, distributed equally, in accordance with the orders of the probate court, between the four heirs of the said Angela Cadematori, including plaintiff, and was paid to them by the said administrator, and was received by them. Defendant further states that the said Espenschied sold and conveyed the said premises to the defendant for a consideration

in excess of said sum of twelve hundred and twenty-eight dollars, and that this defendant and the said Espenschied have, since said twenty-third day of November, 1891, annually paid taxes upon the said property, to the amount of three hundred dollars.

"Defendant further states that if there was any defect in the conveyance of said premises to the said Angela and Theresa Cadematori, whereby the legal title thereof failed to pass to the said Angela and Theresa, yet the said conveyance operated to transfer to the grantees therein the beneficial ownership in the said premises, and by reason of the facts hereinbefore stated plaintiff is not entitled in equity to enforce, as against defendant, his legal title, if any he has.

"Defendant further states that if there was any defect in the proceedings whereby said premises were sold to the said Espenschied by the administrator of said Angela Cadematori, by reason whereof said Espenschied failed to acquire the legal title to said premises, yet by reason of the premises, the defendant has as equitable defense and offset to this action to the extent of the purchase money so paid the said Espenschied, together with interest thereon, and to the extent of the taxes so paid by said Espenschied and by defendant, together with interest thereon, which offset amounts in the aggregate to the sum of $1,800, and defendant prays that plaintiff be ordered to pay said amount to defendant before any judgment for the possession of said premises shall be rendered in his favor; and defendant also prays for such other and further relief as he may be entitled to in the premises."

The facts are about as follows:

Dominic Cadematori, being the owner of two lots in the city of St. Louis, the one in controversy here known as the Espenschied lot, and another known as the Crone lot, conveyed the Espenschied lot to one Signiago, and the Crone lot

Cadematori v. Gauger.

to Henry N. Hart. Signiago and Hart conveyed both lots to Jecko as trustee of Paula Cadematori, wife of Dominic. Paula conveyed the Espenschied lot to her two daughters, Theresa and Angela. Theresa conveyed her half interest to Espenschied. Angela died, and her half interest was sold by her administrator under an order of the probate court, Espenschied being the purchaser. Espenschied conveyed the lot to respondent. Dominic Cadematori died before his wife, but after the execution of her deed to her two daughters. Paula died, leaving in addition to the two daughters to whom she had made the conveyance above referred to, three children, the plaintiff being one of them. Plaintiff brought ejectment for both the Espenschied and Crone lots, and the two cases were tried together.

In these two cases the following facts are admitted.

"First. The properties in issue originally belonged to Dominic Cadematori.

"Second. Dominic Cadematori and Paula, his wife, joined in conveyances of the properties so that by mesne conveyances the title to both pieces of property became vested in Joseph Jecko, as trustee for Paula Cadematori, wife of Dominic Cadematori; in the Stifel case the conveyance being herewith filed and marked 'Exhibit A,' and in the Crone case the conveyance being herewith filed and marked 'Exhibit B.' The property was conveyed by Cadematori and his wife in the Stifel lot to Signiago, and in the Crone lot to Hy. N. Hart, who in turn conveyed both to Joseph Jecko as trustee.

"Third. Dominic Cadematori, being in the kingdom of Italy, executed a power of attorney to his wife Paula Cadematori, which was recorded in the city of St. Louis, a certified copy of which power of attorney and the translation thereof is herewith filed and marked 'Exhibit C.'

"Fourth. Paula Cadematori and her trustee conveyed both properties to Theresa Catharine E. Cadematori, her daughter, and Angela Catharine E. Cadematori, her daughter, by a conveyance also herewith filed and marked 'Exhibit D.'

"Fifth. Theresa Catharine E. Cadematori, grantee in above deed, conveyed all interest acquired by her in the properties to Fred F. Espenschied, in the Stifel lot, and to C. C. Crone, in the Crone lot, which deeds are on record in the St. Louis city recorder's office.

"Sixth. Angela C. E. Cadematori died, Gus V. R. Mechin was appointed administrator of her estate, and as such administrator upon proceedings and under the order of the probate court, sold the interest of Angela C. E. Cadematori in the properties in controversy in the Stifel lot to Fred F. Espenschied, and in the Crone lot to C. C. Crone. The proceedings in the probate court are herewith offered in evidence and made part of this agreement.

"Seventh. Fred F. Espenschied sold and conveyed the property purchased by him at said sale to Stifel by deed recorded in the city of St. Louis.

"Eighth. The proceeds of the sale made by Gus V. R. Mechin, administrator, were applied to the payment of the debts of the estate of Angela C. E. Cadematori, and the surplus over, on order of final distribution by said probate court, was paid over to such of the heirs of said Angela C. E. Cadematori as could be found, and amongst these there was paid to the plaintiff in this case as distributee of said estate the sum of $71.

"Ninth. The taxes upon the respective properties have since and including the year 1891, the date of the administrator's sale, been paid by the purchasers at said sale and their grantees who went into possession of the property when they

Cadematori v. Gauger.

obtained their deed.    The taxes so paid upon the Stifel lot being for the year,

| | |
|---|---|
| 1891 | $ 30.36 |
| 1892 | 29.31½ |
| 1893 | 29.31½ |
| 1894 | 29.11 |
| 1895 | 34.64½ |
| 1896 | 34.64½ |
| 1897 | 34.64½ |

"and sprinkling taxes for

| | |
|---|---|
| 1891 | $  2.24 |
| 1892 | 7.61 |
| 1893 | 6.15 |
| 1894 | 7.09 |
| 1895 | 4.11 |
| 1896 | 3.63 |
| 1897 | 3.14 |

"The date of this deed to Espenschied being December, 1891, the Stifel lot being then and now vacant property.

"Tenth.    No tender has ever been made by plaintiff or any one in his behalf of the amount received at the administrator's sale, or the amount paid for taxes nor any portion thereof in case of either lot.

"Eleventh.    The taxes paid upon the Crone lot for the same period are as follows:————

"Twelfth.    The price paid Fred. F. Espenschied by Stifel was $————.

"Thirteenth.    Dominic Cadematori died in Italy since the making of the deed by Paula Cadematori's trustee to her daughters, Theresa C. E. and Angela C. E. Cadematori; he left six children, one of which said children died intestate and without issue before the making of said deed, said Dominic leaving three daughters and two sons, John B. Cadematori,

plaintiff herein, and Joseph Cadematori, the three daughters being the same persons mentioned in the deed from Paula Cadematori's trustee, and Mrs. Mary Capelli, the third daughter. Paula Cadematori died since the making of said deed.

"Fourteenth. The force and effect of the above mentioned documents are not admitted but referred to the court as to their legal effect.

"Fifteenth. The consideration paid by Fred. F. Espenschied to said Gus V. R. Mechin, administrator, was $1,228.50."

The deed to Jecko, trustee for Paula Cadematori, was also offered. The habendum clause in said deed is as follows: "To have and to hold the said property or lot aforesaid, with all rights, privileges and appurtenances thereunto belonging to the said Joseph Jecko in trust for the sole and only use and benefit of the said Paula Cadematori, wife of the said Dominic Cadematori, and her heirs forever, the said Jecko hereby agreeing that should at any time the said Paula Cadematori, by a request in writing, by her consent, and by and with the consent of Dominic Cadematori, should he be living, witnessed by his writing, he will execute such deed or instruments of writing of said property as the said Paula, by and with the consent of her said husband, shall request and direct as aforesaid, and pay all and every such sum or sums of money, he shall receive for rents and profits or by way of sale."

The power of attorney from Dominic Cadematori to Paula was also introduced, and is as follows:

"*Power of Attorney of Dominic Cadematori.*

"Humbert I, reigning, by the Grace of God and the will of the nation, King of Italy.

"In the year one thousand eight hundred and eighty, on the fourth day of the month of September, at the hour of seven postmeridian, in San Colombano Certinoli, in the chamber of the Communal office, in the parish of San Colombano, in the street of the Maggi, No. 53.

"Before me, Luigi Norero, a notary with a residence in the Commune of San Colombano Certinoli, registered at the Notarial Council of the District of Chiavari, and in the presence of Francesco, son of Giambatista, deceased, a farmer, and of Rosa Romaggi, daughter of Luca, who is still living, wife of Giambatista Lavazzola, a hostess, both born, living and domiciled at San Colombano, witnesses known as competent—appeared Dominic Cadematori, son of Giovanin, deceased, a proprietor, known by me the notary as born, living and domiciled at Certinoli in the Commune of San Colombano Certinoli, province of Genoa, who voluntarily by the present act has elected and constituted and does elect and constitute as his attorney, both general and special as regards what is hereinafter mentioned, Paula Romaggi, daughter of Bartolomeo, deceased, wife of said Dominic Cadematori, born also here, but now absent, authorizing her specially as husband to any act whatsoever, she being born at Certinoli, but now residing at St. Louis, State of Missouri, United States of America. To administer and place in his name and authority all the property which he, the said constituent, has or possesses in the United States of America, and to this end to carry out such agreements, prices and conditions as she may deem best. To transact and arrange concerning the same in any cause, litigation or dispute. To make promises, submissions to arbitration and amicable compositions with renunciation of appeal. To agree to liquidations and systematization of accounts, salaries and compensations. To make division of the property, with the power of accepting or assigning causes of

action with or without consideration and to elect counsel. To exact from any person or official, public or private, whatever is due him, whether as principal, interest, rents or otherwise with the power of giving receipts and valid discharges. To take money in exchange, to arrange payment of debts in his name, to accept or reject whatsoever credit or gift with the benefit of law and inventory. To be present and oppose any affixing or removal of seals. To give and accept property in payment. In any cause to have recourse and make declarations at any office. In a word, to do all and as much as this constituent could do if he were present. Restricted, however, to property possessed by him in the United States of America. To rebut matter in all causes and litigations, active and passive, instituted or to be instituted before any judge, tribunal, court, magistrate or authority, and note all the acts of said judicial cause necessary and opportune up to the final definite decree or decrees and their full execution. To accept and deliver oaths and subpoenas, to appeal and refrain from appeal, to substitute other persons with the same or more limited powers, this instrument, however, always remaining in effect.

"And I, the notary, being requested, have received this act, which I have reduced to writing by my care and hand, and which has been subscribed by the constituting party, by the above named witnesses and by me, the notary, which act I read to the constituent, who declares the same to be his act in accordance with his will, in the presence of the above named witnesses. This act is written on four sides of a sheet of stamped paper comprising the present, which contains a few lines of signatures.

(Signed)        "Dominic Cadematori.
                "Lettora Francesco, witness.
                "Romaggi Rosa Lavazzolo, witness.
                "Luigi Norera, Notary."

This instrument was executed in accordance with the law of Italy.

A copy in conformity with the original written on a sheet of stamped paper at the request of Dominic Cadematori: "Colombano Certanoli, September 7, 1880.    (Notarial Seal.)

"Luigi Norera, Notary."

The deed from Paula to her two daughters was also introduced.   The grantors in that conveyance are described as follows:

"....... By and between Joseph Jecko, of the city of St. Louis, Missouri, acting herein at the written request of said Paula Cadematori, evidenced by her signature and seal to this instrument, Paula Cadematori, of the city of St. Louis, and Dominic Cadematori, husband of said Paula Cadematori, of San Colombano Certanoli, Italy, party of the first part."

.......

The deed recites a consideration of six hundred dollars.

The concluding clause of the deed is as follows:   "A further consideration for this deed is the natural love and affection which the said Paula Cadematori has and bears unto the said Theresa Cadematori and Angela Catharine Cadematori, the grantees aforesaid, said grantees being the daughters of said Paula Cadematori and said Dominic Cadematori, her husband, the signature of said Dominic Cadematori to this deed by Paula Cadematori his attorney in fact, by virtue of a power of attorney, recorded herewith in the office of the recorder of deeds of the city of St. Louis, witnesses that in addition to the foregoing that said Cadematori, by this writing, gives his full consent and approval to this conveyance."

The receipt of plaintiff for his distributive share of the estate of Angela Cadematori was also introduced.

The point is made that the deed from Signiago to Joseph

Jecko, trustee for Paula Cadematori, did not create a separate equitable estate in the land in her, because, as is claimed, it in no sense excludes the interest of her husband in the property conveyed. This position we think untenable, because Joseph Jecko was by express provision in the deed, "to have and to hold the said property or lot aforesaid with all rights privileges and appurtenances thereto belonging . . . . . . . in trust for the sole and only use and benefit of the said Paula Cadematori, wife of said Dominico Cadematori," thus in apt words creating in her an equitable separate estate. [Morrison v. Thistle, 67 Mo. 596.] And in determining this question it is wholly immaterial whether the deed excludes the interest of the husband of Paula in the property conveyed· or not.

Nor, are we able to give our assent to the assertion that this deed, in creating a separate equitable estate in Paula Cadematori, did so with a restraint upon her rights of anticipation, unless she first obtained the written consent of her husband to any conveyance of the lot by her.

It is quite clear we think that the deed from Paula Cadematori and her trustee, to her two daughters, passed the fee of the land therein described, although her husband did not join in the deed, as there was nothing in the deed to Jecko, her trustee, which made it necessary for him to do so, and in the absence of such restriction, she had the same power to convey as if she had been a feme sole. This being so, the assent of her husband was unnecessary. There is nothing in the terms of that deed which makes such assent a condition precedent to the execution by her of a deed conveying the property. And in the absence of some provision in the deed making such assent necessary to its valid execution, she was at liberty to convey it just as if she had been a feme sole.

In the case of Turner v. Shaw, 96 Mo. 22, in passing

Cadematori v. Gauger.

upon the power of a married woman to convey her separate equitable estate, SHERWOOD, J., in speaking for the court said:

"But it may be urged that this deed was utterly invalid, because it was executed by the wife alone. However this may be as to mere statutory estates, which require a joinder of husband and wife in order to their valid execution, it will not hold as to separate estates in equity, which the wife may charge, mortgage, or convey without let or hindrance from her husband. With regard to such property she is, in equity, a feme sole, and has the *jus disponendi,* which is the inseparable incident of ownership. By virtue of this, she charges, she incumbers, or she absolutely disposes of it, or she binds it by her parol agreements, just as any other owner would. This position is sustained by abundant authority, both here and elsewhere." [Citing Livingston v. Livingston, 2 Johns. Ch. 537; Whitesides v. Cannon, 23 Mo. 457; King v. Mittalberger, 50 Mo. 182; McQuie v. Peay, 58 Mo. 56; Claflin v. Van Wagoner, 32 Mo. 252; Schafroth v. Ambs, 46 Mo. 114; Kimm v. Weippert, 46 Mo. 532; Lincoln v. Rowe, 51 Mo. 571; DeBaun v. Van Wagoner, 56 Mo. 347; Gay v. Ihm, 69 Mo. 584; 1 Bishop Mar. Wom., sec. 853; 2 Ib., sec. 163; Taylor v. Meads, 34 L. J. (N. S.), 203.]

With respect to the half interest of Angela Cadematori which was purchased by Espenschied at the sale by the administrator of her estate, plaintiff, in receiving from and receipting to said administrator for his distributive share, is estopped from asserting title to the property conveyed by the administrator's deed. [McReynolds v. Grubb, 150 Mo. 352.] While the answer does not in so many words plead estoppel, the allegations therein amount to an estoppel, which is all that is necessary.

The judgment is affirmed. *Sherwood, P. J.,* and *Gantt J.,* concur.