R. A. MARSDEN v. DANIEL NIPP and MATTIE JUNE NIPP, Appellants. —30 S. W. (2d) 77.

Division Two, July 3, 1930.

*Max F. Ruler* for appellants.

*Frank Dietrich* and *R. E. Kleinschmidt* for respondent.

DAVIS, C.—This is an action in ejectment. The court rendered judgment in favor of plaintiff for possession of the real estate, for $450 damages, with the monthly rents and profits at the rate of $100 a month from April 16, 1927, to the day of restitution of the premises, and for costs. Defendants appealed.

The petition was an ordinary pleading in ejectment. The answer comprised a general denial and an equitable answer and cross-bill praying for affirmative relief. However, the record shows that the equitable answer and cross-bill were withdrawn by defendants' counsel, thus leaving the general denial only as an answer.

The defendants offered no testimony. The evidence adduced for plaintiff warrants the finding that the title to the lands in controversy emanated from the Government. Thomas P. Eaves and Clara L. Eaves were the common source of title. Eaves and his wife acquired the land by a warranty deed from J. B. Alderson and wife, dated January 29, 1918. Eaves and his wife placed two deeds of trust on the land. On December 1, 1921, they executed a deed of trust on said land to the Federal Land Bank of St. Louis to secure notes of even date aggregating $6,000. On December 23, 1921, they executed a second deed of trust on said land to the Farmers & Citizens State Bank to secure a note for $3,644.75, dated December 1, 1921, due one year after date, drawing interest at

eight per cent annually. On April 9, 1926, said Eaves and wife by warranty deed sold and conveyed the land to defendants. In the second deed of trust, A. O. White was named trustee, and, as default was made in the payment of the note secured by the second deed of trust, the Farmers & Citizens Bank, the owner and holder of the note, requested Ray Williams, the Sheriff of Jefferson County, on the information that A. O. White was in Texas, to act as trustee. He agreed, and, after advertising in a Jefferson County newspaper for four weeks, beginning March 24, 1927, and ending April 14, 1927, he did, on April 16, 1927, at the post-office door in the city of DeSoto, Jefferson County, sell the land in controversy to R. A. Marsden, at public auction for $5,825. It seems that the land was sold subject to the first deed of trust, and that there remained in the hands of the sheriff-trustee, after paying the note secured by the second deed of trust, interest thereon and expenses of sale, the sum of $1707.65 to the credit of defendants. On April 22, 1927, the defendants executed an assignment of the sum in the hands of the sheriff-trustee, reading:

"Whereas Daniel E. Nipp and Mattie June Nipp were on April 16, 1927, the owners of the following described land located in Jefferson County, Mo. [describing lands in controversy].

" 'Whereas default was made by them in the payment of a certain second deed of trust and note approximately four thousand ($4,000) dollars due to the Farmers & Citizens State Bank of DeSoto, Mo., and whereas foreclosure proceedings were had at DeSoto, Mo., by the holder of said note and deed of trust and one Ray Williams, sheriff of said county, as successor trustee, sold said real estate on April 18, 1927, under said foreclosure to one R. A. Marsden and said sheriff-trustee received upon said sale a surplus of over seventeen hundred ($1700) dollars which he now has and holds as belonging to the owners of the equity in said real estate, namely, the undersigned; and whereas the undersigned have engaged Wade L. McCann of St. Louis, Mo., to try and negotiate a new loan for them either upon a first deed of trust or second deed of trust and to aid in securing a good bond in order that they may redeem said real estate; and the undersigned have also engaged the services of Max F. Ruler, an attorney at law of St. Louis, Mo., and Sam McKay, a lawyer of DeSoto, Jefferson County, Mo., to use their best efforts and endeavor for the undersigned to redeem said real estate from said foreclosure sale as provided by the laws of the State of Missouri and upon failure of the court granting right of redemption or our failure to make the required bond, then to file a bill in equity seeking to set aside said sale for unfair dealings as to my said attorneys may deem best; the said Wade L. McCann to pay out of said funds the expenses of said attorneys and their fees according to the order of Max F. Ruler.

828

" 'Now, therefore, in consideration of the services already rendered by said McCann, Ruler and McKay and for the services by them to be rendered and on account of the premises and our interest therein, we, the undersigned, hereby sell, set over, assign and transfer unto Wade L. McCann of St. Louis, Mo., and unto his assigns all our right, title and interest in and to the seventeen hundred ($1700) dollars surplus so held by Ray Williams, sheriff, as successor trustee, under aforementioned foreclosure sale; hereby giving and granting unto our said assigns the power and right to receive, collect and receipt for said surplus money; hereby directing and authorizing said Ray Williams to pay said moneys or the net balance remaining after paying the indebtedness, interest and charges of the note and deed of trust foreclosed to the assignee herein; giving and granting to our said assignee and his assigns full power and authority to sign our name to any receipt or document necessary to receive said money. This assignment is intended to convey our interest in said fund and being so coupled with interest is not revocable. It is understood that in event we are successful in redeeming said real estate under redemption proceedings and actually redeeming said premises within twelve (12) month statutory period then this assignment is null and void and of no effect.

" 'Executed in duplicate originals at St. Louis, Mo.

" '(Signed) DANIEL E. NIPP.' "

" 'MATTIE JUNE NIPP.' "

The second deed of trust, which was foreclosed, and under which plaintiff claims title, reads in part:

"And the said party of the second part, or in case of his absence, death, refusal to act, or disability in any wise, the (then) acting sheriff of Jefferson County, Missouri, at the request of the legal holder of said note, may proceed to sell the property hereinbefore described, or any part thereof, at public vendue, to the highest bidder, at the post-office door in the *City of St. Louis,* Jefferson County, Missouri, for cash, first giving 20 days' public notice of the time, terms and place of sale, and of the property to be sold, by advertisement in some newspaper printed and published in the city of DeSoto, Mo."

The evidence as to the absence of A. O. White, trustee, named in the second deed of trust, tends to show that the cashier of the Farmers & Citizens Bank corresponded with him, and that he was in the State of Texas on April 16, 1927. The evidence further shows that the foreclosure sale by the sheriff took place at the post-office door in the city of DeSoto, Jefferson County, Missouri.

A summary of the trustee's deed to plaintiff, as condensed by defendants-appellants in the abstract of the record, reads:

"T. P. Eaves and Clara L. Eaves, his wife, by sheriff, as trustee, to R. A. Marsden.

"Trustee's deed under sale dated April 16, 1927, recorded April 18, 1927, in book 107, page 118.

"Consideration fifty-eight hundred twenty-five dollars.

"Acknowledgment is in proper form.

"Bargains, sells and conveys same lands.

"Recites that T. P. Eaves and Clara L. Eaves, his wife, by their deed of trust dated the 23rd day of December, 1921, and recorded in the Recorder's office in Jefferson County, Mo., in book 62, page 148, conveyed to A. O. White, as trustee, the property herein described in trust to secure to Farmers & Citizens State Bank the payment of the promissory note in said deed described; that the said A. O. White is now absent from the State, and by the terms of said trust deed the sheriff of this county should act in his stead; that default was made in the payment of said promissory note secured by said deed and by reason whereof said sheriff did at the request of the legal holder of said note proceed to execute the powers to him given by said deed and did on Saturday, 16th day of April, 1927, between nine o'clock A. M. and five o'clock P. M. having previously given 20 —— notice of the time, terms and place of sale and of the property to be sold by advertisement printed and published in Jefferson County Republican, a newspaper printed and published in the City of DeSoto, County of Jefferson and State of Missouri, a copy of which advertisement with the affidavit of the publisher of said newspaper proving its publication is hereto attached and made part hereof at the post-office door in the City of DeSoto, County of Jefferson, State of Missouri, aforesaid expose to sale for cash to the highest bidder, at public auction, the said property and real estate and at said sale R. A. Marsden being the highest and best bidder for the sum of $5,825 the same was struck off and sold to him at that price and sum.

"Witness hand and seal.

"RAY WILLIAMS, Trustee.   (Seal)"

The newspaper advertisement is summarized by defendants-appellants in the abstract of the record, as follows:

"The above mentioned notice of sale gives names of parties executing said deed of trust, the date, book and page where recorded, a particular description of the real estate to be sold, and of the note secured; that trustee A. O. White was absent from the State, request of the legal holder for sheriff to act, the time and place of sale with signature of sheriff, which notice was pubished in the Jefferson County Republican, a weekly newspaper printed in County of Jefferson for four weeks, the first insertion being on March 24, 1927, and the last insertion being on April 14, 1927, as shown by the affidavit of R. E. Crow, manager of said newspaper."

Plaintiff testified that he was not a stockholder or director of the Farmers & Citizens Bank, or interested in any way, and that

he was not acting in any way for that bank on April 16th, when he bought the farm in controversy. He said that defendant, Mr. Nipp, was still in possession of it, and that he had been unable to get possession of it under his deed. After he purchased the property, he paid the Federal Land Bank mortgage in the sum of $5,869.48.

After plaintiff had introduced the assignment, plaintiff and defendant rested and the court said: ''The judgment will be for the plaintiff for the possession of the premises and as there are no damages shown, there will be no judgment for that, and the judgment will be for the rents and the profits, at the rate of $100 a month.''

The court then permitted plaintiff to reopen the case to prove damages, to which defendants objected and excepted. Plaintiff testified that a young orchard had been badly neglected, and that it had been damaged $50 to $75, and that damage of $150 resulted by failure of being able to put in a part of the land. The fences were in bad shape and ought to be repaired. The stock had run over the place and damaged it a good deal. High water of the river broke over and washed away a part of the land. The washing of ditches could have been prevented by putting cedars in them and filling them up. The damage altogether was about $400. Plaintiff rested. The court said: ''The judgment will be for plaintiff for $450 and $100 a month for rents and profits from date of judgment.'' The record then reads: ''Thereupon the court rendered the following judgment.'' It is unnecessary to set forth the judgment *in haec verba,* but it ordered, adjudged and decreed that the writ of possession or restitution be issued restoring said premises to plaintiff, and that plaintiff have and recover of defendants, for his damages, the sum of $450, with monthly rentals and profits at the rate of $100 a month from April 16, 1927, to day of restitution of said premises, together with costs of the suit.

Other facts, if any, pertinent to the issues raised, will be adverted to in the opinion.

I. While the equitable answer and cross-bill, asking affirmative relief, would have converted the cause into a suit in equity, nevertheless, as defendants' counsel withdrew it before trial, the cause remained an action at law. Consequently, if there is any evidence to support the judgment, in the absence of procedural errors, it must stand, for, in a law case, we are as much bound by the finding and judgment of a trial court as by the finding and verdict of a jury. [Craig v. Rhodes, 298 S. W. 756.]

II. Defendants' first two assignments of error relate to the three judgments alleged to have been entered. Defendants contend, first, that, after the first judgment rendered, the court erred in permitting the cause to be reopened and hearing additional testimony; second, that a judgment derives its force, not from its entry of record, but from its rendition by the court; third, the third judgment, so called, could not be legally rendered and entered without vacating and setting aside its two previous judgments; fourth, that neither of the judgments are responsive to the evidence or the finding of facts, nor are either of them pertinent to any issue involved and consequently they are void.

(a) The reopening of a case, after both sides have closed, to permit the introduction of testimony is a matter largely within the discretion of the trial court, and, unless an abuse of discretion appears, which does not appear herein, we refuse to interfere with such discretion. [Buck v. Buck, 267 Mo. 644, l. c. 663, 185 S. W. 208.]

(b) The second and third contentions will be jointly considered. It is true, as defendants assert, that a judgment derives its force, not from its entry of record, but from its rendition by the court, even if it is entered by the clerk in vacation after the term ends. [State ex rel. v. Henderson, 164 Mo. 347, l. c. 360, 64 S. W. 138.] In 33 Corpus Juris, page 1191, it is said: "A judgment must be reduced to writing, and cannot exist merely in the memory of the officers of the court, although a judgment is rendered and exists as such when it is orally announced from the bench, and before it has been reduced to writing and entered by the clerk."

The general rule is that a judgment stands as such until expressly vacated in the manner prescribed by law. [Lane v. Kingsberry, 11 Mo. 402.] However, the announcement of the trial court was not a pronouncement of judgment, for it does not appear that it was the intention of the court to render judgment. The court did not say that judgment is rendered, but merely informed the parties that judgment will be for the plaintiff, etc. Nor was the second announcement intended as the pronouncement of a judgment, for it was information to the parties that, after the additional evidence introduced, he thought that plaintiff was entitled to damages. It was nothing more than an amendment or correction of his first announcement. The announcements were intended merely to acquit the parties with his views to be embodied in a written judgment, and it is evident that he intended nothing more.

Notwithstanding, if the trial court rendered the two judgments as contended, or either of them, we think they were constructively

832

vacated by the last judgment entered, for the trial court may, of its own motion, vacate a judgment during the term at which it was entered. In 34 Corpus Juris, page 325, it is said: "A judgment may be practically vacated, although not in terms set aside, by the taking of subsequent proceedings in the same action which are inconsistent with the judgment continuing in force, as by the entry of a second judgment in the case, different from the first." [Pim v. St. Louis, 122 Mo. 654, 27 S. W. 525; Johnson v. Hesser, 61 Neb. 631; Mornyer v. Cooper, 35 Iowa, 257; Winer v. Mast, 146 Ind. 177, 45 N. E. 66.]

(c) We think that defendants' fourth complaint is untenable. The trial court found that plaintiff was entitled to possession of the premises in controversy on April 16, 1927, and was on the day of judgment entitled to possession, and that defendants had no right, title or interest in the real estate, and were not entitled to possession, and that plaintiff had suffered $450 damages by reason of the unlawful detention, and that the value of the monthly rents and profits was $100 a month. The finding and the judgment were responsive to the evidence and the issues. [Sec. 1830, R. S. 1919.]

III. Defendants complain that it was an abuse of the discretional power of the trial court to refuse to grant them a continuance. The only mention of a continuance in the record reads: "This above verified plea defendants' counsel withdrew after an unsuccessful request for a continuance on account of defendants' inability to be in court on the trial date for the purpose of substantiating the allegations in that plea." The above statement appears only in the record proper. Even if the statement was sufficiently definite to raise the question, which it was not, all adverse rulings on motions must be preserved in a bill of exceptions to permit an appellate court to review such assignments of error. [Hart's Adm. v. Walker, 31 Mo. 26; State v. Baird, 297 Mo. 219, 248 S. W. 596.]

IV. Defendants present that the evidence does not substantively or sufficiently show that the trustee, A. O. White, was permanently absent, or that he refused to act, or that he was unable to perform the duties and powers given in the deed of trust, or that he was deceased, or that the legal holder of the note requested the sheriff to act as trustee, or that the holder of the note applied to the Circuit Court of Jefferson County for the appointment of a successor trustee, or that the holder of the note applied to a court of equity to reform the deed of trust as to the provision, that upon default the sale was to be

made at the post-office door in the *City of St. Louis*, Jefferson County, Missouri.

Defendants also present that the sheriff's (trustee's) deed to plaintiff is fatally defective and void, because it fails, first, to recite, with respect to the notice given, any number of days; second, to recite that the notice of sale was published in Jefferson County; third, to show that the deed was signed by the sheriff as successor-trustee and as the then acting sheriff; and, fourth, to recite that Ray Williams was the then acting sheriff of Jefferson County.

It may be, although we do not so decide, that defendants' contentions as above related are sound. Notwithstanding the contentions, and in spite of the fact that they may be sound, the defendants, by their assignment to McCann, have ratified the foreclosure sale and have become estopped from maintaining that the trustee's deed to plaintiff was ineffective to convey the real estate. The written assignment by defendants to McCann, with respect to $1700 surplus remaining in the hands of the sheriff, states that Ray Williams was the sheriff of Jefferson County, and that he was the successor-trustee, as well as the default of defendants in the payment of the note secured by the second deed of trust. Inasmuch as Williams, the sheriff, was by the assignment admittedly the successor-trustee, it is evident that he became such by virtue of the deed of trust foreclosed. As he was the trustee, the conveyance of the property by him as such vests the title in his grantee, even though a breach of trust occurred. [Schanewerk v. Hoberecht, 117 Mo. 22, 22 S. W. 949; Hume v. Hopkins, 140 Mo. 65, l. c. 73, 41 S. W. 784; Feller v. Lee, 225 Mo. 319, 124 S. W. 1129.] The above rule should be limited, we think, to the legitimate exercise or the attempt to exercise by the trustee the powers conferred by the deed of trust.

Neither in their assignment of errors nor in their points and authorities do defendants attack the introduction in evidence of their assignment to McCann in any manner. But, they do attack it in their argument by saying that it was not pertinent or germane to a question in ejectment for possession; that it did not tend to prove or disprove any material fact which would or would not entitle plaintiff to possession of the lands under a plea in ejectment; that it was a contingent assignment only and was not binding on plaintiff, for he was not a party thereto.

The bill of exceptions shows that defendants did not object to the introduction of the assignment for any of the preceding reasons, or because it was not embraced within the pleadings. The assignment was pertinent and germane and tended to prove plaintiff's title and his right to possession, for it tended to show that defendants ratified the foreclosure sale. If the sale under the deed of trust was ineffective because of a defect in the second deed of trust,

then both plaintiff and defendants knew of the defect, for the deed of trust was recorded and they are charged with notice. By the statement in their brief, "after notice of redemption read at sale by Nipp," defendants seem to admit that defendant Daniel Nipp was present at the sale. The record shows that defendants, before the sale, knew of the existence of the second deed of trust, for it was recorded. It also shows that the trustee's deed to plaintiff was recorded on April 18, 1927, prior to defendants' assignment to McCann on April 22, 1927. It is evident, therefore, that defendants are to be charged with knowledge of all defects in the instruments relative to the foreclosure sale. By their action in executing and delivering the assignment for the surplus money to McCann, defendants ratified the sale and estopped themselves from claiming the land, upon McCann demanding and accepting the money from the sheriff. On this subject, in Austin v. Loring, 63 Mo. 19, l. c. 23, the court say: "There can be but one sentiment in reference to the justice of this case, and the law utters the same voice. Hewitt saw his property sold to satisfy his debt. The purchaser had the means of knowing whether the proceeding was regular, and so far bid at his peril, but he paid his money in good faith and Hewitt, with a full knowledge of all the facts, not only allowed him to pay off and satisfy the judgment, but he demanded and received the surplus which the plaintiff bid, and which he paid to the sheriff for his use and benefit. By his actions he ratified the sale, and estopped himself from laying any claim to the land. I have been unable to find any case which countenances his claim, and I apprehend none can be found." The following cases are in point: Chase v. Williams, 74 Mo. 429; Cadematori v. Gauger, 160 Mo. 352, 61 S. W. 195; McDonnell v. DeSoto Savings & Bldg. Assn., 175 Mo. 250, 75 S. W. 438; Hector v. Mann, 225 Mo. 228, 124 S. W. 1109; Lawson v. Cunningham, 204 S. W. 1100; Milan Bank v. Richmond, 217 S. W. 74.

V. Neither the plaintiff nor the defendants offered declarations of law. None were given by the court. As this is an action at law, we are precluded from interfering with the judgment, where the evidence is sufficient to support it. The brief of defendants presents other questions, but as the questions depend upon the defendants requesting or the court giving declarations of law, it is evident that the questions are not open to consideration.

The judgment is affirmed. *Henwood* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.