## CYNTHIA G. HECTOR, B. W. STEWART, CARRIE G. FRAZIER and WATSON L. STEWART, Appellants, v. DAVID MANN.

### In Banc, February 2, 1910.

1. **JURISDICTION: Order of Publication: Sufficient Affidavit.** An affidavit in a partition suit, stating that the individual defendants "are non-residents of the State of Missouri," authorizes an order of publication against such defendants, and if that is sufficient, the court has jurisdiction over them. It is not necessary, where the defendants are individuals, that the affidavit also state that the individual defendants "cannot be served with the ordinary process of law."

2. **PARTITION: Amended Petition: Different Land: New Theory on Appeal.** Where defendant in the trial court did not object to the amended petition filed in partition that it was a departure from the original petition, described different land and therefore stated a different cause of action, he will not be heard to make that point on appeal. An objection to the amended petition that it did not contain a prayer for an order of publication, did not raise the point.

3. ————: **No Approval of Sale.** The statute contemplates that the deed shall remain in abeyance until the court has approved the report of the sale in partition, and a deed made before confirmation is inoperative, unless the coparceners have estopped themselves to question its validity.

4. ————: ————: **Minute Book.** A memorandum found in a minute book in the office of the circuit clerk indicating that the report of sale in partition was approved, is not a record entry showing the approval of the court. Such a minute is not a judgment; at most it is evidence on which a *nunc pro tunc* judgment of approval could be based.

5. ————: ————: **Estoppel: Ratification.** The coparceners who were brought into court in the partition suit by order of publication estopped themselves from insisting that the order of sale was not approved by accepting their respective shares of the proceeds of the sales and signing receipts which designated the lands sold and the respective interest of each. And though they state in their suit to remove the sheriff's deed as a cloud upon their title that they did not accept the proceeds knowing there had been a partition proceeding, yet if the record shows they did know or that the words used in the receipts were sufficient to put them upon inquiry, they will not be permitted to repudiate the sale.

*Held,* by **VALLIANT, C. J.,** dissenting, that knowledge sufficient to put them upon inquiry was not sufficient. But they must have had actual knowledge, and if they accepted the money, supposing it was the proceeds of a foreclosure sale of a mortgage on other lands, they are not estopped either by estoppel or ratification.

6. ———: ———: ———: ———: **Knowledge of Purchaser: Change of Position.** Nor is it necessary in such case, in order that the coparceners who have knowingly received the proceeds of the sale, be estopped from repudiating it, for that it was not approved by the court, that the purchaser should have known and relied upon the receipt of the purchase money and changed his situation to his disadvantage. That is the rule for estoppel *in pais,* but there are other forms of estoppel, which strictly speaking are acquiescence or ratification, which as completely amount to a bar. In those cases the rule is that, when those who are entitled to avoid a sale knowingly adopt and ratify it, equity will estop or bar them from afterwards setting it aside. (**VALLIANT, C. J.,** dissenting.)

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Shepard & Shepard* and *McKay & Corbett* for appellants.

*Ward & Collins* and *T. J. Brown* for respondent.

LAMM, J.—This is a suit under section 650 to try and determine title to certain real estate in Pemiscot county. The petition also states matters of equitable cognizance and, in its omnibus form, may be considered a bill in equity to cancel and annul a certain deed in partition, remove a cloud upon plaintiff's title, submitting conditions to be enforced in a certain contingency as the price of the decree.

It is conceded that one Gowah W. Stewart was the common source of title. Dying he left a widow, Cynthia G. (who intermarried with one Hector, now dead) and three children, B. W., Watson L. and Carrie G.,

the latter intermarried with one Frazier. Said widow and children are parties plaintiff. The case proceeds on the theory that B. W. Stewart has no interest; his title as an heir of Gowah W. passed to one Riley under unchallenged execution sales antedating the partition. Why he is a party is entirely dark.

Plaintiffs allege in their petition that they own in fee the real estate described; that it is not in possession of anyone; that defendant claims some unknown interest, title and estate in the premises which cannot be stated unless under a certain deed executed by the sheriff of Pemiscot county in pursuance of a decree in partition which decree ordered the sale of the described land belonging to plaintiffs; that if defendant claims through said proceedings and deed they should be held void because these plaintiffs (defendants in said partition suit) were non-residents of the State of Missouri and were not summoned to appear or in any way notified as the law commands; that they had no knowledge of said proceedings, actual or constructive; that the circuit court of Pemiscot county had no jurisdiction over them, and to so deprive them of their property would not be due process of law; that plaintiff, Watson L. Stewart, at the time was a minor, and the plaintiff, Carrie G. Frazier, a married woman. Alleging they did not knowingly receive any proceeds of the sheriff's sale in partition, but got a small sum of money, the amount of which they do not remember, from the sheriff, they allege they were not informed of the source from which said money was derived and had no knowledge of any of their lands being sold in partition. They aver themselves willing to submit to equitable terms if the proceeds paid them were derived from a partition sale and ask the court to ascertain the fact, adjudge the amount of money so received and allow them to refund to the party or parties jointly entitled to it with interest—praying, furthermore, that the court determine their interest and that of the defendant, respectively,

in the real estate, and define and adjudge the estate and interest of the parties, cancel the sheriff's deed (if it is the deed under which defendant claims), and vest out of defendant and into plaintiffs all apparent title under said deed and grant them general equitable relief.

The answer denies plaintiffs' title and asserts defendant's. Alleging furthermore that plaintiffs were tenants in common with one William Riley (execution purchaser of B. W. Stewart's interest); that Riley sued in partition; that such steps were taken in that case that a valid judgment was rendered and the land was sold by the sheriff at a valid and regular sale; that at such sale it was knocked down to defendant on his bid of $500, and he received a sheriff's deed conveying all the right, title and interest of plaintiffs in said land; that the bid was all the land was worth at the time of the sale, and that plaintiffs, with full knowledge of the suit and sale, received from the sheriff the amount bid, knowing it was the consideration paid by defendant; that since the date of that deed defendant has been in actual possession of the land with the knowledge, consent and acquiescence of plaintiffs; has paid the taxes and expended large sums of money since then in good faith under a claim of ownership and made lasting and valuable improvements; that plaintiffs, knowing these things, remained silent and retained their share of the partition money until defendant reclaimed the land from marsh and swamp and made it valuable, wherefore defendant invokes estoppel.

For another defense it is alleged that B. W. Stewart (prior to the partition) executed to defendant his promissory note for the sum of $275, drawing 8 per cent interest, due January 1, 1897; that in consideration for such loan and to secure the same, plaintiffs executed to one Shead, as trustee, a deed of trust conveying to him the land described in the petition; that the note coming due, said Shead, as trustee, filed an in-

tervening petition in said partition, asking to be sub-
rogated to the rights of plaintiffs in the funds derived
from the sale of the lands conveyed by the deed of
trust; that such steps were taken in that case that he
was subrogated to those rights as to Cynthia G. Hec-
tor, Carrie G. Frazier and Watson L. Stewart; that the
land was purchased by defendant at the partition, sale
on the judgment rendered in the partition suit; that
he paid to the sheriff the amount of his bid, the sheriff
by virtue of the terms of the order of the sale accepting
in part payment the amount due on said note.

On these several pleas, defendant prayed the court
to adjudge the title to be in him; that plaintiffs have
no title whatever; that if the court found the partition
sale void, etc., then, in that event, a decree go making
said deed of trust in full force and effect, a lien on the
land; that it be sold under such decree foreclosing the
deed of trust; that the proceeds be applied to the pay-
ment of the debt evidenced by the note and for such
other and further relief as seems meet and proper.

The reply denied the new matter in the answer.

On issues thus outlined the chancellor found for
defendant, decreeing him to be the owner of the land
and that plaintiffs have no title.   From that decree all
the plaintiffs prosecute their appeal.

As said, Gowah W. Stewart was admitted to be the
common source of title.   The relationship of the plain-
tiffs severally to him as hereinbefore set forth was
shown and that he died in 1879, leaving plaintiffs his
only heirs.

Cynthia G. Hector testified by deposition that she
was never summoned or in any other way notified in the
partition suit; that she had no knowledge of such pro-
ceedings until two years after the sale; that, living then
in Arkansas, she employed attorneys there to look after
her land, and for the first time ascertained through them
that parties were claiming through partition proceed-
ings the land descended to plaintiffs from Gowah W.

Stewart. Those attorneys were instructed to bring a suit to recover the land. Witness stated she "never knowingly received one cent from the sale of any of the land." She admitted plaintiffs received "a small amount of money from the sheriff of Pemiscot county, Missouri, at one time"—the exact amount not remembered. It was very small and witness supposed it to be "the balance due from the estate of Gowah W. Stewart there being something said about this being the amount due me after paying Mann Brothers." (NOTE: It seems the note hereinbefore referred to was payable to Mann Brothers.) In relation to the deed of trust mentioned in defendant's answer, she said it was executed to secure B. W. Stewart's note; that when the sheriff transmitted the money to them, that note was long past due and that plaintiffs understood it to be the balance due them out of the sale under that deed of trust and "had no idea that the money received" was from the sale of the lands in partition.

The deposition of Watson L. Stewart was read by plaintiffs. At the time of testifying he was twenty-seven years old. His testimony was to the same effect as that of his mother, Mrs. Hector.

To the same effect was another deposition read by plaintiff, to-wit, that of Carrie G. Frazier. Speaking of the money received of the sheriff, she said she "understood it to be money received in some way from the estate of my father, probably from some land sold on account of a mortgage given to David Mann or Mann Brothers."

Such was the testimony of plaintiffs in chief.

To sustain his title, defendant offered his original deed in partition from McFarland, sheriff, dated February 21 1898, conveying the land to David and Fred Mann. This offer was objected to "for the reason that judgment in partition proceedings on which said deed is based is void for the reason that the court rendering such judgment had no jurisdiction of the parties de-

fendant in such suit; and for the further reason that said deed purports to convey only the interest of Cynthia G. Hector and not the interest of any of the other parties in this cause." The objection was overruled, the deed admitted and plaintiffs saved the point. As the deed sustained the averments of the answer in that regard (including the payment of $500 bid at the sheriff's sale), it will not be necessary to cumber the opinion by setting it forth.

Defendant next offered an amended deed bearing date during trial of the pending suit and executed by McFarland, ex-sheriff. In the narrations of the original deed the parties to the partition proceedings were set forth as "William Riley, petitioner against Cynthia G. Hector *et al.*, defendants"—the names of the defendants not otherwise appearing. The amended deed corrected that irregularity. To the offer of this deed plaintiffs' counsel interposed the same objection they offered to the original with this in addition, "and for the further reason that the sheriff at this late date has no right to make the amended deed now offered, the judgment in the partition proceedings being barred by the Statute of Limitations it being more than three years since the rendition of the judgment." The objection was overruled, the deed admitted and plaintiffs saved the point.

To further sustain issues on his behalf, defendant put on the stand Mr. McFarland, the sheriff at the time of the partition sale, who executed the foregoing deeds, and who testified that he remembered the sale of the land. He described the partition suit as one "wherein William Riley, a brother of Judge Riley, was plaintiff and Cynthia G. Hector, Carrie G. Frazier and husband and Watson L. Stewart were defendants." He identified the land as that described in the deed and partition. He paid to Mrs. Hector, Mrs. Frazier, Watson L. Stewart and William Riley, the funds received from the sale and had the receipts now in hand. He paid Mr. Mann

some of the money, sent the checks and receipts to the several defendants and the receipts came back several months afterwards, the checks being paid in about two weeks, inclosing the checks and receipts by letter; could not say now what he said in the letters; did not go into a detailed report of the matter because he "guessed if they wanted to know they would ask some questions." The receipts follow:

"Office of the Sheriff of Pemiscot County, Missouri, August 18, 1898. Received of J. H. McFarland, ex-officio sheriff of Pemiscot county, Mo., the sum of thirty-one dollars and 85-100 dollars, being amount in full due me from the distribution of funds derived from the *sale of certain real estate sold for partition* on the 9th day of February, 1897, under an order issued by the circuit court of Pemiscot County, Missouri, in the case of William Riley v. Cynthia G. Hector et al." Signed, "Cynthia G. Hector," and marked in the left hand corner, "original."

"Office of the Sheriff of Pemiscot County, Mo., Aug. 19, 1898. Received of J. H. McFarland, ex-officio sheriff of Pemiscot county, Mo., the sum of $172.13, being amount in full due me *from the sale of certain real estate sold for partition* on the 19th day of February, 1897, under an order issued by the circuit court of Pemiscot County, Mo., in the case of William Riley v. Cynthia G. Hector." Signed "W. L. Stewart;" "original," in left hand corner.

"Office of the Sheriff of Pemiscot County, Mo., Aug. 19, 1898. Received of J. H. McFarland, ex-officio sheriff of Pemiscot county, Mo., the sum of fifty-five and 73-100 dollars, being the amount in full due me from the distribution of funds *derived from the sale of real estate sold for partition* on the 9th day of February, 1897, under an order issued from the circuit court of Pemiscot county, Mo., in the case of William Riley v. Cynthia G. Hector et al." Signed, "Carrie Frazier"—"Original" in left hand corner.

Suspending the testimony of the Sheriff McFarland for the moment in order to explain more fully the receipts and the letters accompanying them, it appears that subsequently plaintiffs produced in court at the trial a letter as and for a copy (*mutatis, mutandis*) of those received by them severally from the sheriff at the time of the transmission of the money, and introduced that letter in evidence, reading:

"GAYOSO, Mo., Aug. 19, 189. ...
"Mrs. Carrie Frazier, Pine Bluff, Ark.
"Dear Madam: Herewith I enclose you check *for your interest in the Goah Stewart estate* less your interest in the 'Long Field,' which was *decreed* to go to Mann Bros. The synopsis of the matter is as follows, . to-wit:

Gross proceeds ........................$768.93
Total expense ......................... 154.13
———
Net proceeds ......................$614.80
Mrs. Hector's dowry deducted........... 98.40
———
Amount to be divided among three heirs...$516.40
One-third of your share of the whole...... 172.13
Your interest in Long field which Mann
    Bros. got ......................... 116.40
———
Your interest in balance of the estate.$ 55.73

"*I suppose that you understand that this is the proceeds of the balance of the Stewart land which was sold in February term of our circuit in '97*, and that Mann Bros. were subrogated to your interest in the Long field on the account of a trust deed signed by you to them. I send you duplicate receipts to sign, as I need one receipt to keep *and one to file in court*. Please sign and return them as soon as suits your convenience, and oblige,        Yours respectfully,
                        "J. H. McFARLAND.

"I just collected this a few days since is the reason it has not been sent ere now."

Before introducing that letter it was shown to the sheriff on the stand and he testified in regard to it. Resuming his testimony he said the money mentioned in the receipts was the proceeds of the partition sale after deducting the amount paid Mann on his mortgage. It seems that at the date of the mortgage, Watson L. Stewart was a minor, then shortly to become of age, and that the sheriff on that account was instructed to make no deduction from his share because of the Mann mortgage, and made none; that there were two sales and he also sent plaintiffs their *pro rata* of the first sale and supposed he received receipts but could not now find them. No complaints were made by the parties at the time. Referring to the letter hereinbefore set forth, he was not prepared to say it was an exact copy, but it was about such a letter as he would have written; that he wrote plaintiffs when he sent the first checks for the first sale, but this letter was written in regard to the proceeds of the last sale.

On cross-examination he said he made two sales of the Stewart land, two reports and two remittances; that he had the checks he sent for the proceeds of the first sale, they did not relate to the land in question. His recollection was that he sent to each one of the parties a letter with a check and a brief statement showing the amount going to them. His best impression was that the copy of the letter examined by him was a copy of that written to each. It was just such a letter as he would have written and he had no recollection of writing explaining the matter more fully. His recollection was that he furnished each one of them a statement similar to that in the letter put in evidence.

Plaintiffs objected to the introduction of the aforesaid receipts for the reason there was nothing to show that the money was received with knowledge that it was for this land or lands in which any of the plain-

tiffs, except Cynthia G. Hector, had an interest. The objection was overruled and the point saved.

Defendant next introduced an intervening petition filed in the partition suit by Shead, trustee under the Mann deed of trust, having for its purpose to subrogate Shead to the rights of defendants in the proceeds, and followed that up by putting in the deed of trust securing the Mann note, signed and executed by Mrs. Hector, Mrs. Frazier and Watson L. Stewart.

Defendant next put in the decree in partition. This decree was objected to for the reason that "no summons had ever been issued directed to the defendants in said suit nor any order of publication made such as the law requires and the defendants in said suit were not in court and the court had no jurisdiction to render the judgment in question." The objection was not allowed and plaintiffs saved the point.

Defendant next introduced the order subrogating Shead to the rights of defendants in the partition suit to the proceeds derived from the sale of the land conveyed by the deed of trust, to the amount of the secured note, and followed that with various interlocutory orders and judgments in the partition proceeding.

At this point defendant rested.

Plaintiffs offered in rebuttal the original petition in the partition suit and the affidavit attached upon which an order of publication was based. Among other things in that affidavit was the statement that "the defendants Cynthia G. Hector, Watson L. Stewart, Carrie G. Frazier, James Frazier, are non-residents of the State of Missouri."

Plaintiffs next put in an amended petition filed in the same cause. The original petition was filed July 19, 1895—the amended one on the 4th day of December, 1895. Neither of these petitions is copied in full in the abstract. The object of introducing them is not apparent further than, as will presently appear, plaintiffs contend the affidavit was not sufficient to sup-

port an order of publication. Whether the order of publication was made on the last petition or on the first does not appear. If the object of introducing the amended petition was to show that after constructive service on defendants, an amended petition was filed materially affecting the issues, then such amendments or alterations are not pointed out.

Plaintiffs next, for the purpose of showing that the report of sale was never approved, put in an order found of record in the Circuit Court Record No. 3, page 229, known as the subrogation order, which narrates, under the caption of the case, that "on this day the sheriff files his report of sale herein." It then goes on to make a renewing order of sale as to a tract of land not in dispute, provides for subrogation as already stated and says nothing about an approval of the report of sale.

At this point defendant resumed putting in his proof, as follows: a sheriff's deed conveying the interest of the plaintiff B. W. Stewart to William Riley. No date is given nor is the deed set out. The abstract says: "Said deed is not set out herein as there is no contention but that William Riley is the owner of B. W. Stewart's interest."

Defendant next offered the minute book of the circuit court of Pemiscot county, reading:

"No. 553. The regular judge vacates the bench and Special Judge T. R. R. Ely takes the bench. Report of sale filed and approved. Order of sale renewed as to 184.64 southeast quarter 18-20-12, and 80, east half southwest quarter 27-20-12, A. T. Shead subrogated to rights."

To the offer of that minute plaintiffs' counsel objected. The record shows the following objection which was overruled and an exception saved: "To which offering plaintiffs object for the reason that said order does not describe the land in question, and for the further reason that said minute shows that the approval

of sale was made prior to the sale of the land in question and is an approval of sale of land made under a prior suit in partition, and for the further reason that this order shows it was made on the 13th day of February, 1896, and the deed offered in evidence shows that this land was not sold until February, 1897.''

Defendant next offered the record entries of the order of publication and proof of publication, alleged to be fair and regular and hence not abstracted. Declarations of law were asked by plaintiff, which, the cause being in equity, are immaterial.

Such is the record.

It will be seen there is no charge or proof of fraud in the concoction of the judgment in partition and none to the effect that the plaintiffs were injured by, or imposed upon, misled or in anywise hoodwinked into, receiving the proceeds of the partition sale. More significant still, there is no charge or proof that the partition sale was for an inadequate consideration—gross or otherwise. For aught appearing here, the land sold for all it was worth and plaintiffs received all justly their due in a fair partition. The then minor, Watson L. Stewart, long since of age and doing for himself, admits in his petition that he got his *pro rata* share of the money, whatever amount it was. The case does not proceed on the theory that it turns on the fact of his minority at the time. It is true he testified he got none of the money but he does not deny his receipt nor does he disaffirm his act as a minor or put himself in a situation to be entitled to disaffirm it on that score. He puts himself in the same boat with his mother and sister. His theory seems to be that if they have a case, he has—otherwise not. In this condition of things the decree cannot be disturbed on the ground of his minority nor do plaintiffs' learned counsel make any point on the fact of minority nor on the other fact of Mrs. Frazier being a married woman at the time. It seems Mrs. Hector was discovert, her husband having died.

There is no brief for respondent and its absence has thrown unnecessary labor upon this court. While respondent may submit his case in that form, if he chooses, resting on the presumption that his judgment was right and the fact that an appellant carries the burden of upsetting it, yet the wisdom of such course is not apparent to us. In the administration of justice by an appellate tribunal an apt brief is a material aid and its absence leaves the case unreasoned and dark on one side.

With which general observations we come to a closer view of the assignments of error.

(a) The main proposition relied on for reversal is that the affidavit in the partition suit was not sufficient to support the order of publication. It is argued that jurisdiction was never obtained over defendants and there was no due process of law. The vice of the affidavit is said to be that it does not say that defendants "cannot be served with the ordinary process of law." It will serve no useful purpose to restate the learning on the question. The point has been resolved against appellants in Keaton v. Jorndt, 220 Mo. 117, and in Huiskamp v. Miller, 220 Mo. 135. These cases received diligent attention by our learned brethren in Division Two. They are well reasoned and meet our unqualified approval. The circuit court of Pemiscot acquired jurisdiction of the persons of the defendants in the suit and the point is disallowed to appellants.

(b) Something is said in appellants' brief about filing an amended petition in the partition suit. It is argued that it was a departure from the original petition, described different land and stated an essentially different cause of action. But appellants are precluded from making the point that different land was described because they bring here no description of the land set out in either petition. We can see no essential difference in the cause of action stated in the one peti-

225 Sup—16

tion from that in the other, nor does it appear that the point was made or relied on in the court below. When appellants offered the amended petition respondent objected to its introduction for the reason that there was no occasion to show in that petition the prayer for an order of publication. That ground of the objection implies that appellants offered the petition to show the absence of a prayer for an order of publication in the amended petition. No other purpose is indicated by the record, and appellants do not now press upon us that point. The points now made appear to be afterthoughts operating by way of a new revelation, a change in the theory of the case above from that entertained below, and we therefore treat the matter as afield.

(c) When Sheriff McFarland was on the stand he threw a side remark into his testimony earmarking the partition suit, not brought out by any question, but by way of *descriptio personae,* viz., "William Riley, a brother of Judge Riley, was plaintiff." Based on this pin prick of testimony it is argued that William Riley, plaintiff in the partition suit, was a brother of Hon. Henry C. Riley, who was judge of the Pemiscot Circuit Court at the time that suit was pending and that he sat in that case; hence the decree in the partition suit was null and void. We shall not elaborate the point. No such ground was urged below to invalidate the partition proceedings. To the contrary, in the pleadings and in many objections below the point does not appear. Not only is it too late to spring such theory on appeal, but there is no testimony directed to the point. We shall not take judicial cognizance that "Judge Riley" is one and the same with Judge Henry C. Riley, Judge of the Pemiscot Circuit Court. The exuberance of American life, though developing under a democratic form of government, permits (in the familiarity of homespun talk), titles such as "Judge" this and "Colonel" that to be given *willy nilly.* Some colonels

and judges (in chimney-corner philosophy) are said to
be born so, others to achieve rank and others to have
it thrust upon them. There may well be in the region
in hand other men bearing the honest name of Riley,
who are spoken of as "Judge," besides the elected
officer who has long and well administered justice in
the circuit court of Pemiscot. Moreover, it appears
affirmatively that Judge Ely presided at some of the
judicial steps in that partition proceeding. In the
absence of showing to the contrary, the presumption
is he presided throughout in every vital judicial act.
This, since a circuit court in Missouri is presumed to
proceed by right and not by wrong. Appellants make
the stout statement that Judge Henry C. Riley deter-
mined a cause in which his brother was a litigant, with-
out the consent of the parties to the suit and in con-
travention of the statute. [R. S. 1899, sec. 1602.] This
charge is equivalent to a lapse in a refined sense of
judicial propriety. It has no basis in this record and
is made inadvertently by learned counsel. The point
is ruled against appellants.

(d) It is next argued there was no approval of
the report of sale, hence the deed, made without war-
rant of law, does not operate to vest title. Whatever
may be the rule in execution sales generally, relating to
their approval by the court out of which process issued,
our statute on partition contemplates that a deed shall
remain in abeyance until the court has approved the re-
port of sale. [R. S. 1899, secs. 4410 and 4414.] Indeed,
until an amended statute permitted appeals from an in-
terlocutory judgment in partition (R. S. 1899, sec. 806),
the approval of the report of sale was the final and only
judgment from which an appeal would lie (Buller v.
Linzee, 100 Mo. 95), and the statute still permits ap-
peals from a final judgment in partition. [Sec. 806;
*supra*; sec. 4424, R. S. 1899.] The statutory theory
being that the deed shall not pass until the sale has
been judicially affirmed, accordingly it has been point-

edly ruled that a deed made before the confirmation of the sale is inoperative. [Burden v. Taylor, 124 Mo. 12; Clark v. Sires, 193 Mo. 502; Thomas v. Elliott, 215 Mo. 598.]

In this case there is no record entry showing the approval of the report. Defendant introduced a memorandum found in a minute book in the office of the clerk of the Pemiscot Circuit Court indicating that a report of sale was approved. But this minute was never amplified and dignified into a record entry. Such a minute is in no sense a judgment of the court approving the sale. It may be evidence upon which a *nunc pro tunc* entry could be based. [See Reed v. Colp, 213 Mo. l. c. 586 *et seq.*, and cases cited.] The objections made below to the introduction of this minute were properly overruled because they did not make the point we are now considering and which appellants press here. But the probative force of the evidence has to be dealt with in an equity case and we cannot very well write the law to the effect that the loose memoranda of a clerk (a mere egg out of which a record entry is to be hatched and frequently dealing with abbreviations and other matter intended to refresh the memory), shall stand in the place and stead of a solemn record entry in the proceedings of a court of justice.

If there were nothing more in the case we would reverse the judgment and remand the cause for a new trial in order to permit defendant (if he so elects) to apply for a *nunc pro tunc* entry and procure the same if the proper *data* exist to warrant it. But there is something else in the case, viz.:

(e) Conceding that the deed was prematurely made under the present record, yet it does not follow that plaintiffs were entitled to a decree determining and vesting title in them or any of them. They are confronted with the fact that they received the fruits of a judicial sale and now seek to repudiate the sale. They

say they did not knowingly accept the proceeds of a sale in partition. But the record is against them. The sheriff's letters sent respectively to them refer to their interest in the "Gowah Stewart estate," to Mrs. Hector's "dowry" and a commutation of the same, to the respective interests of the heirs in land sold at a term of the circuit court, to the fact that subrogation was "decreed" and that a receipt was demanded to "file in court." If we recur to the receipts they sufficiently indicate that the money distributed arose from a "partition" sale. They say so in so many words. If defendants did not know the meaning of all the terms used, they were sufficient to put them upon inquiry and they made none. The record does not show they were illiterate people, unfamiliar with the use of fair English words indicating a proceeding in court, a judgment, sale and distribution of proceeds to heirs, and it would be dangerous to justice to permit a mere statement from a witness that he did not understand or did not know what was plainly told him, to overcome the force and effect of such documentary evidence.

But it is argued that in order to operate as an estoppel the purchaser should have known and relied upon the receipt of the purchase money and changed his situation to his disadvantage because of such reliance. I cannot agree such argument is sound. There are estoppel and estoppels and some forms of them are so defined by law-writers and jurists as to make one element in the estoppel the knowledge and reliance of one party upon the acts and conduct of the other—for instance, estoppel *in pais,* arising from misrepresentation by word, act, conduct or silence. But there are other forms of estoppel in which knowledge of the fact upon the part of the person invoking the estoppel, and reliance upon the fact and a change of situation based upon that reliance, is not an element. It may be that "estoppel," speaking with precision, is the wrong designation and that in attempting to classify and give

names the doctrine we are about to invoke is improperly classified as "estoppel" and that it does not come under that head but springs from election, ratification, affirmance, acquiescence, acceptance of benefits or what not. It is classed, however, by law-writers under the head of "quasi-estoppel." [Bigelow on Estoppel (5 Ed.), p. 693; 16 Cyc., p. 787, 784 *et seq.*]

Says Bigelow: "Many of the cases upon this subject it will be noticed, are simply cases of ratification or acquiescence; and it is a questionable use of terms, as we have seen, to apply the word 'estoppel' to them. A few more cases will serve to enforce this observation. Thus, if heirs of age join in a deed of quitclaim with a trustee of the ancestor's real estate, to complete title made by a previous deed executed by the trustee, it is said that they will thereafter be 'estopped' from contesting the validity of that earlier deed. So if a man assent with knowledge of the facts to the appropriation by an officer of the law of moneys arising from a judicial sale, he will be estopped thereafter from objecting."

The same careful writer says (p. 684), under the head of "Quasi-Estoppel: Election" and a subhead, "Inconsistent Positions:" "Thus, a party actively affirming a transaction such as a contract or a purchase, by receiving and retaining money upon it, is estopped thereafter to deny the force of any of its express or implied terms or conditions." He suggests there is no great objection to the use of the term "estoppel" in such cases if used as a synonym with "bar" or "preclusion" (p. 694).

Under the subheads of "Acceptance of Benefits" and "Quasi-Estoppel" (16 Cyc., supra), it is said: "Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he becomes bound by the transaction and cannot avoid its obligation or effect by taking a position inconsistent therewith." But the custom is to include the doctrine

just announced under the head of "estoppel" and so the case learning terms it. If it were to be held that one invoking the doctrine should know the fact of acceptance of the proceeds of a judicial sale and in reliance upon that acceptance, change his condition, the doctrine would have little application in the practical administration of justice. It is not the rule for purchasers at judicial sales to interest themselves in the distribution of the amount bid, in the first instance nose out the diposition of such funds and act on the strength of knowledge so obtained. It is sufficient that when their title is assailed they are able to show by way of defense that the assailant elected to affirm the transaction by accepting the fruits of the sale. A long line of cases in Missouri sustains that doctrine on grounds of elevated morals. In no case we can find, breaking on the exact point, was any stress laid upon the fact that the party invoking this particular form of estoppel need know at the outset of the act of affirmance or change his position on the strength of it in order to make it effective as a defense. In some of those cases other forms of estoppel were present and the discussion is broad enough to cover them, but in the precise form up for consideration the rule is as stated above.

In McClanahan v. West, 100 Mo. 1. c. 323, it was said: "And then there are the receipts given by the minors, and by the plaintiff herself, after she attained her majority, when acting in the presence, and under the advice of her counsel for her share of the proceeds of the sale in partition. If she knew from what source these proceeds came and still receipted for them, and there is good reason to believe she did know, she certainly would not be allowed to repudiate the transaction now, even if the partition proceedings were, in fact, void. She certainly could not have both the money and the land. [Austin v. Loring, 63 Mo. 19, and cases cited.]"

In Austin v. Loring, 63 Mo. 1. c. 22, it was ruled as

follows: "But no person will be allowed to adopt that part of a transaction which is favorable to him, and reject the rest to the injury of those from whom he derived the benefit. When those who are entitled to avoid a sale adopt and ratify it, equity will estop them from afterwards setting it aside. When a sale of land is made no person can be permitted to receive both the money and the land. . . . . It makes no difference whether the proceedings under which the sale occurs are voidable or wholly void in consequence of the want of jurisdiction." In that case this court also says: "Where a party has taken the fruits of a judicial proceeding, he should not afterwards be heard to question it. Though an estoppel may debar the truth in a particular case, yet, as was said by the Supreme Court of the United States in Van Ranselaer v. Karney (11 How. 326), it imposes silence on a party only when in conscience and honesty he should not be allowed to speak."

In Nanson v. Jacobs, 93 Mo. l. c. 344 *et seq.*, the question was discussed and many cases cited. The substance of them all is that where an election exists between inconsistent remedies the party is confined to the remedy which he first prefers and adopts. The Nanson case related to hops and it was held that: "For the most obvious reasons, then, the plaintiffs could not with one hand gather in the proceeds of the hops, in the assignee's court, and with the other hand take the hops and their proceeds in the circuit court." To the same effect is Boogher v. Frazier, 99 Mo. 325; also Clyburn v. McLaughlin, 106 Mo. 521. In the last case it was held, in effect, that an owner of land sold for delinquent taxes, who, with knowledge of the facts, accepts a part of the proceeds, thereby recognizes and ratifies its validity and will not afterwards be heard to question it. In Pockman v. Meatt, 49 Mo. 345, the same proposition is resolved. In Fischer v. Siekmann, 125 Mo. 165, the doctrine was applied to the receipt by an heir of his share in a partition sale. In that case the

guardian received the share and afterwards the heir gave an acquittance on final settlement. In Meddis v. Kenney, 176 Mo. 200, the doctrine was applied to an heir who had received his share of the surplus proceeds of land sold by an administrator for the payment of debts. To the same effect is Cadematori v. Gauger, 160 Mo. 352.

In a very late case, Proctor v. Nance, 220 Mo. 104, a defendant in a tax judgment and sale (one Hall) subsequently quitclaimed his interest to plaintiff who sued the purchaser. After paying the taxes and costs, defendant's bid created a surplus of $4.75. Some time afterwards this surplus was deposited in the county treasury. Thereafter Hall gave an order for it, which order was honored. The defendant pleaded this fact as an affirmance of the sale and an estoppel. It nowhere appears that defendant, prior to preparing his defense, knew anything about the appropriation of this small surplus or in aught changed his position because of such acceptance. In considering those facts, GANTT, J., among other things, said: "To obviate the effect of Hall demanding and receiving the surplus of the purchase money paid by the defendant Nance at the sheriff's sale plaintiff pleads that Hall at the time he gave the order for said surplus had no knowledge that the sale was void, and that Hall was an uneducated person, and did not intend to ratify said sale by receiving said surplus. But the very character of the transaction of taking the surplus of the sale necessarily advised Hall that his land had been sold, and that this was a part of the purchse money paid by the defendant at the execution sale. It carried notice upon its face, or at least was of that unequivocal nature that it put Hall upon inquiry as to the source of that surplus and why it was there in the treasury for him and it must be held that he had notice that his land had been sold for the taxes under the tax judgment. He had the option to refuse to take down this surplus and bring this action to re-

move the cloud from his title, or he could ratify the
sale even though it was a void judgment, and thereby
estop himself from disputing the validity of the pro-
ceedings under which the land had been sold. . . . .
In this case the defendant Nance had the means of
knowing whether the proceedings in the tax case were
valid or void and so far bid at his peril, but he paid his
money in good faith, and Hall, with knowledge that the
defendant had bought and paid for the land and that
this purchase money had gone to the satisfaction of
the taxes on the land, demanded and received the sur-
plus from the treasury, and thus must be held to have
ratified the sale.   The doctrine announced in Austin v.
Loring, 63 Mo. 19, has recently been reaffirmed and ap-
proved by this court In Banc at this term of this court,
in the case of Cape Girardeau & Thebes Bridge Ter-
minal Railroad Co. v. Southern Illinois & Missouri
Bridge Co., 215 Mo. 286.  The attempt of the plaintiff
herein to avoid the effect of taking down this surplus
and ratifying the sale by tendering back the amount
of the surplus into court to be repaid to the county
treasury was futile, as the rights of the parties were
fixed when the sale was ratified by the demanding and
receiving of said surplus by Hall, the grantor for the
plaintiff herein.  Nor do we think the plea that Hall
was an uneducated person and did not intend by re-
ceiving the surplus to ratify the sale, can avail the
plaintiff in this case.   There is not the slightest pre-
tense that the defendant Nance, or, for that matter,
any other person, made any false representation to
Hall to induce him to accept said surplus, and, in the
absence of some overreaching of him in the matter, his
ignorance of the law cannot be allowed to nullify his
act in taking a part of the purchase money.   In our
opinion the defendant Nance is entitled to the benefit
of this principle of estoppel in this case."

The Cape Girardeau and Thebes Bridge Terminal
Railroad Company case, 215 Mo. 286, cited in the Proc-

Hector v. Mann.

tor case, supra, is an illuminating discussion of the proposition in hand. In that case, defendant did nothing on the strength of plaintiff's taking down the condemnation money deposited in court in a case bottomed on the exercise of the right of eminent domain. All the defendant knew and did was known and done prior to that time. When the money was taken down the case was in this court on appeal and yet, on suggestion made here, we ruled unanimously that after receiving that money in another suit plaintiff could no longer question the condemnation proceedings.

The case at bar is a typical case to apply the doctrine we have been discussing. There are features strikingly in common with the Proctor case and which excuse our liberal quotation from so late an opinion.

Apposite is the following significant admission in appellants' brief: "They [defendants in the partition—plaintiffs here] received the money in good faith, believing it was the surplus over and above the amount of the debt for which the land was sold under the deed of trust and supposed their interest in that had been sold and made no further claim to that land." Yet in the suit at bar they are claiming the identical land covered by the Mann deed of trust, discharged of the lien. That is to say, if they had lost it by foreclosure of the mortgage they would rest content with the surplus of that sale in pocket. But as they lost it by partition sale, the receipt of the proceeds does not satisfy or bind them. There is no great amount of equity in that proposition.

But we have pursued the matter far. To sum up, we rule that by receiving the proceeds with knowledge of the source from which they came they elected to treat the report of sale as approved. They substituted their own approval for that of the court and are bound by it.

This cause was assigned to Division One and the foregoing opinion by LAMM, J., was there handed

down. The cause subsequently coming into Banc on a dissent, was reheard there. Something was said in oral argument in relation to subrogating the Mann Brothers to the extent of their mortgage debt in the proceeds of the sale of the mortgaged premises, and it was argued the court had no power to make such substitution on an intervening petition in a case where defendants were brought in by constructive service. But no such error was assigned in appellants' brief. We, therefore, say nothing on the question. The divisional opinion is adopted In Banc as that of the court.

The premises considered, the judgment is affirmed. All concur except *Valliant, C. J.*, who dissents in an opinion filed.

## DISSENTING OPINION.

VALLIANT, C. J.—I concur in all of the opinion of my learned brother LAMM in this case except in the result, and except also what is therein said in paragraph *e* on the subject of estoppel. Before we render judgment taking a man's land from him and giving it to another on the ground of estoppel we should have some equities in the case strong enough to ride over and bear down the law. Estoppel is a doctrine of equity and should be applied only when equity demands it. The party to be estopped must, knowingly, have acted in such a manner as to mislead his adversary and his adversary must have placed reliance on the action and have acted as he would not otherwise have done. Ratification arises when a party knows that he is not bound by the contract that has been made in his name and is free to repudiate it if he will, but, on being informed that such contract has been made in his name and informed of the essential features of it, chooses to adopt it as his own.

As I have endeavored to point out in my dissenting opinion in Hector v. Warren, *post,* p. 255, the evidence does not make out a case for the application of either the doctrine of estoppel or that of ratification.

But this case differs from that of Hector v. Warren in this, to-wit: Here the land in question is the land that was conveyed to the trustee to secure the debt of W. B. Stewart to Mann Brothers; the plaintiffs had joined in that conveyance, they knew that Mann Brothers held that deed of trust and they say in their brief: "They received the money in good faith, believing it was the surplus over and above the amount of debt for which the land sold under the deed and supposed their interest in that had been sold and made no further claim to that land." It seems that the land was never sold under the deed of trust, but under the partition decrees together with a considerable quantity of other land. The record shows that the court let the mortgagee come in as a party to the partition suit and subrogated him to the rights of the plaintiffs in the proceeds of the sale of the land covered by the deed of trust, and awarded to him the proceeds of the sale of that land. There was nothing in the original petition on which the order of publication was founded that gave notice that any such proceeding was contemplated. So far, therefore, as the land in this case is concerned there is no pretense that these plaintiffs got the proceeds. The parties managing the proceeding seem to have gone on the theory that the plaintiffs having mortgaged the land had no further interest in it, and they treated the mortgagee as the owner of the equity, without taking the trouble to foreclose the mortgage. As the decree was rendered on default of appearance of the parties brought in by the publication, it is probable that the attention of the trial court was not especially drawn to this peculiar phase of the case, but however that may be it was an illegal

proceeding and one of which these plaintiffs had not even constructive notice. The only interest of these plaintiffs that could have been sold at the partition sale was their equity of redemption, but the court put the mortgagee in their shoes and awarded to him the proceeds of the sale of that equity of redemption. A mortgagor's interest in the mortgaged land may be sold under a decree in partition, but the purchaser at such sale would take the land subject to the mortgage. I do not now say that, if a scheme to substitute the mortgagee for the mortgagor had all been set out in the original petition of which these plaintiffs by the order of publication are presumed to have had constructive notice, and they suffered it to go without complaint at the time, they could afterwards have complained of it, although I find no sanction for such a proceeding in the statutory proceeding for partition, but I do say it could not be injected into that suit without any notice, actual or constructive, to the parties whose interests were involved. If we give to this constructive notice full effect it was notice only that a suit in partition was filed wherein it was proposed to sell their equity of redemption in the mortgaged land, that a sale thereunder would carry to the purchaser their interest subject to the mortgage, and that the proceeds of the sale of their equity would go to them. But after the suit was filed and while it was pending, without any notice to them an entirely new feature was injected into it. Whatever may be the fact with reference to the other land certain it is these plaintiffs never received the proceeds of the sale of the land in suit in this case. In my opinion so much of the proceedings in the partition suit as admit the trustee in the Mann Brothers' deed of trust to take the place of these plaintiffs and receive the proceeds of the sale of their equity of redemption is void. The judgment in this case ought to be reversed.