Stella P. LYTLE, Plaintiff-Appellant,

v.

James W. PAGE, Defendant-Respondent.

No. 10949.

Missouri Court of Appeals,
Southern District,
En banc.

Dec. 13, 1979.

Christopher J. Stark, Springfield, for plaintiff-appellant.

John Z. Williams, Williams & Smallwood, Rolla, for defendant-respondent.

PREWITT, Judge.

Plaintiff appeals from a judgment determining that defendant owns an interest in certain real estate in Phelps County, Missouri. Plaintiff brought this action asking that a deed to defendant be set aside and the title to the real estate be quieted in plaintiff. Defendant counterclaimed, claiming that he has an interest in the property. The trial court, sitting without a jury, found against plaintiff on her petition and for defendant on his counterclaim.

Plaintiff and defendant are brother and sister. The property in question had been owned by their father, S. W. Page. S. W. Page died on November 20, 1966. An estate was opened in the probate court of Phelps County, and the subject tracts were included in the inventory of the estate, showing that decedent owned an "undivided one-half interest" in them. The inventory was apparently filed about December 9, 1966. On January 16, 1967, defendant recorded a warranty deed from S. W. Page to defendant, dated and acknowledged July 5, 1955. Three of the four tracts described in that deed were inventoried in the estate and are the disputed property here. The deed does not purport to limit the interest conveyed to any undivided portion of the property. On February 20, 1967, the probate court entered an order to sell certain real estate inventoried in the estate, including those three tracts. On September 24, 1968, all of the property was auctioned together, and plaintiff was the highest bidder. According to the administrator's deed and the report of sale, the purchase price was $3,550. Plaintiff testified she paid $7,100 for the property and this is the price shown as received on the final settlement in the estate. It also shows that half of the sale proceeds were paid to decedent's widow. After the sale, defendant filed objections to the report of sale, and on October 24 1968, the probate court approved the report and confirmed the sale. It found that the estate had an undivided one-half interest in the property and that defendant had "no right, title or interest to said described real estate". Defendant appealed to the circuit court of Phelps County and the case was set for hearing on April 1, 1969. Defendant testified he was ill and unable to attend, and the court refused a continuance. No evidence was offered by defendant's attorney and on that date the appeal was dismissed. The subject property, as well as the other real estate sold as part of the sale, was deeded to plaintiff by administrator's deed dated April 17, 1969. On the same date decedent's widow conveyed to plaintiff, by quit-claim deed, a part of the land described in the administrator's deed. The estate owed defendant $1,891.04 and he

filed a claim for that amount. The date of his claim and its nature is not in evidence. The final settlement reflects that he was paid on April 18, 1969.

The only dispute in the evidence pertains to the deed dated July 5, 1955, from S. W. Page to defendant. Defendant testified that the deed was delivered to him on that day but he did not record it because his father wanted to continue to use the property. Defendant said he took the deed to his home in Colorado Springs, Colorado and it remained there until after his father's death when he recorded it. Defendant's son testified that he saw the deed in defendant's home in Colorado Springs prior to S. W. Page's death. The parties' sister testified that defendant told her that he found the deed among his father's papers following his father's death. She also stated that in a prior hearing in probate court, she incorrectly testified that she had seen the deed delivered during her father's lifetime. She said she did this to keep her father's widow, who was not her mother, from receiving the property and because defendant said he would sell the property and use the funds to take care of a crippled brother.

In detailed findings of fact, the trial court found that the deed of July 5, 1955 was delivered to defendant by S. W. Page prior to his death. It found that plaintiff was the highest bidder at the administrator's sale by her bid of $3,550; that defendant received $1,891.04 in payment of his claim and $301.15 as his share of the estate as an heir. The court further found that at the time plaintiff bid for the property or before she was required to pay her bid price, she knew defendant claimed the subject property. The court declared that defendant was the owner of an undivided one-half interest in two of the tracts and the owner of all of the third tract. The court ordered defendant to pay plaintiff the sum of $2,192.19, the total he received from the estate as a claimant and heir, with 6% interest from June 18, 1969.

As defendant's interest, if any, in the property in question, arises from deed of July 5, 1955, we consider first plaintiff's contention that the trial court erroneously found that the deed was delivered during the lifetime of S. W. Page. There was evidence by plaintiff that defendant stated he found the deed in his father's papers. Defendant offered evidence that it was delivered to him and he had it in his possession from the day it is dated until he recorded it. Credibility of the witnesses is to be determined by the trier of fact. *Labor Discount Center, Inc. v. State Bank & Trust Company of Wellston*, 526 S.W.2d 407, 420 (Mo.App.1975). Where there is conflicting testimony, deference is given to the trial court's conclusions. *Richardson v. Richardson*, 524 S.W.2d 149, 151 (Mo.App.1975). There was substantial evidence to support the trial court's determination that there was delivery, so we should not disturb that finding. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This point is ruled against plaintiff.

Plaintiff also contends that because defendant received certain funds from the estate in payment of his claim, and his share as an heir, that he has ratified the sale and is estopped to deny its validity as these funds came from the sale of the disputed property. The evidence does not clearly show that he received anything as an heir, but the will and final settlement lead to the inference that he received at least $301.15, and the trial court so found. Other real estate was sold by the estate along with the real estate deeded to defendant. There was no evidence as to the respective values of any of the parcels sold. Apparently it was all sold together and one bid and deed covered all tracts. The order to sell real property recited that the property was being sold because the personal property of the estate "is insufficient for the payment of its obligations". It appears that at least a portion of the proceeds from the subject real estate would have been applied to the payment of defendant's claim and the trial court found that without the sale of the subject property there was insufficient assets to pay debts and claims of the estate, including defendant's claim. It further determined that defendant knew

424

that his claim and share as an heir was being paid from the sale proceeds.

Numerous cases hold that one who knowingly receives funds from a sale of his property, including a judicial sale, cannot thereafter deny the right of sale and claim title to the property. Some of the cases making such holdings or statements and not hereafter discussed are *Roach v. Kohn*, 361 Mo. 597, 235 S.W.2d 284 (1951); *Cobb v. Massey*, 160 S.W.2d 733 (Mo.1942); *Rhodus v. Geatley*, 347 Mo. 397, 147 S.W.2d 631 (1941); *Milan Bank v. Richmond*, 280 Mo. 30, 217 S.W. 74 (1919); *Lawson v. Cunningham*, 275 Mo. 128, 204 S.W. 1100 (1918); *Capitain v. Mississippi Valley Trust Co.*, 240 Mo. 484, 144 S.W. 466 (1912) appealing after remand, 177 S.W. 628 (Mo.1915); *Meddis v. Kenney*, 176 Mo. 200, 75 S.W. 633 (1903); *Mairs v. Knifong*, 557 S.W.2d 682 (Mo.App.1977); *Headlee v. Cain*, 250 S.W. 611 (Mo.App. 1923); *Walker v. Hassler*, 240 S.W. 257 (Mo. App.1922). Also see Annotations at 2 A.L. R.2d 133 and 50 A.L.R. 688. This result has been applied even if the vendor possessed no title and the sale would otherwise be void. *Proctor v. Nance*, 220 Mo. 104, 119 S.W. 409, 412 (1909). It has been held that where one received part of the purchase price at a judicial sale, he may not thereafter question the validity of the sale, even though it be absolutely void. *Rhodus v. Geatley*, supra, 147 S.W.2d at 638. While it has been called "estoppel" and "quasi-estoppel", whether this principle is properly classified under estoppel has been questioned. See *Hector v. Mann*, 225 Mo. 228, 124 S.W. 1109, 1116 (1910). Also see *St. Louis Public Service Company v. City of St. Louis*, 302 S.W.2d 875, 879 (Mo. banc 1957) and *Magenheim v. Board of Education of the School District of Riverview Gardens*, 347 S.W.2d 409, 419–420 (Mo.App.1961). It comes not from estoppel, but from election, ratification, affirmance, acquiescence, and acceptance of benefits. *Hector v. Mann, supra*, 124 S.W. at 1116. It is based on the premise that no person will be allowed to adopt that part of a transaction which is favorable to him, and reject the rest, *Austin v. Loring*, 63 Mo. 19, 22 (1876), and "on elevated morals, common honesty, and pure

good faith". *Proctor v. Nance*, supra, 119 S.W. at 412. It is perhaps more properly classified as "ratification" or "election" than estoppel. *Rhodus v. Geatley*, supra, 147 S.W.2d at 637–638. Whatever its designation, this principle is well established in the Missouri cases. Our supreme court has said: "There is no rule of equity more firmly settled and more just and reasonable than that one who knowingly receives the purchase price of his own estate sold by one assuming to act under a valid power estops himself, in equity, from denying the power." *Cobb v. Massey*, supra, 160 S.W.2d at 735; *Boone v. Oetting*, 342 Mo. 269, 114 S.W.2d 981, 983 (1938).

■ Defendant contends that plaintiff had knowledge of defendant's claim to the land and that because of this knowledge there can be no estoppel. Estoppel ordinarily requires that the one claiming it be misled by another's conduct and this generally cannot occur where the one claiming it knew or had the means of knowledge as to the truth. *Land Clearance for Redevelopment Authority of Kansas City v. Dunn*, 416 S.W.2d 948, 951 (Mo.1967); *Rhoads v. Rhoads*, 342 Mo. 934, 119 S.W.2d 247, 252 (1938); *Mairs v. Knifong*, supra, 557 S.W.2d at 686. The trial court found that plaintiff had knowledge of defendant's claim at the time she bid or paid her money and this fact apparently influenced that court's determination. There was no question but that plaintiff knew of defendant's claim. At the trial plaintiff was asked if she was aware that defendant was claiming a part of the property at the time she bid on it. She replied:

"Well, to my knowledge this had gone through probate court and been throwed out and then was put up at public auction, and I bought it because I thought it was cleared because it went through the probate court."

■ Plaintiff's reliance on the probate court's ruling was ill-founded. The probate court did not have jurisdiction to decide whether the decedent owned the property at the time of his death nor did the circuit

court on appeal, as its jurisdiction was derivative. *In re Schell's Estate,* 390 S.W.2d 618, 620 (Mo.App.1965). Probate courts cannot adjudicate title to real estate. Id. 390 S.W.2d at 620. If plaintiff was misled or relied on others' conduct, it was not the defendant's conduct but that of the probate court.

We must determine if plaintiff's knowledge of defendant's claim to the land, and lack of reliance on any conduct of defendant bars her claim under this point. The only Missouri cases we find which have considered this question hold that in such a situation as here, knowledge, or lack of it, and reliance by the purchaser is not a necessary element. In *Austin v. Loring,* supra, the court noted that the purchaser had the means of knowing whether the proceedings to sell the property were regular and that where one has not been misled to his damage and knew or had means of knowledge, that estoppel does not apply. However, they held that by receiving a portion of the proceeds, the owner ratified the sale and could no longer question it. Similar statements were made concerning a tax sale in *Proctor v. Nance,* supra, 119 S.W. at 412–413. Perhaps the clearest consideration of the necessary elements to invoke this type of "estoppel" or "ratification" is that set forth in *Hector v. Mann,* supra, 124 S.W. at 1116. There the court states:

"But there are other forms of estoppel in which knowledge of the fact upon the part of the person invoking the estoppel, and reliance upon the fact and a change of situation based upon that reliance, is not an element.

. . . If it were to be held that one invoking the doctrine should know the fact of acceptance of the proceeds of a judicial sale, and in reliance upon that acceptance change his condition, the doctrine would have little application in the practical administration of justice. It is not the rule for purchasers at judicial sales to interest themselves in the distribution of the amount bid, . . . .. It is sufficient that when their title is assailed they are able to show by way of defense that the assailant elected to af-

firm the transaction by accepting the fruits of the sale. A long line of cases in Missouri sustains that doctrine on grounds of elevated morals. In no case we can find, breaking on the exact point, was any stress laid upon the fact that the party invoking this particular form of estoppel need know at the outset of the act of affirmance or change his position on the strength of it in order to make it effective as a defense."

■ The opinion in *Hector* appears exhaustive and well-reasoned. No authority is cited to us nor have we been able to find any that convinces us that the reasoning there stated should not be followed. Knowledge of defendant's claim did not prevent plaintiff from receiving that part of defendant's interest sold under the probate court order when he thereafter ratified the sale.

■ The trial court required defendant to pay plaintiff the sums defendant received in payment of his claim and distributive shares with interest. Returning the funds later does not change the results of this principle as when defendant received the proceeds, the rights of the parties were fixed and the sale cannot be avoided by tendering back the funds received. *Proctor v. Nance,* supra, 119 S.W. at 413. In *Hector v. Mann,* supra, plaintiffs' request to tender back the proceeds with interest in exchange for quieting title in them was denied. We believe that acceptance of the proceeds from the sale of the real estate bars defendant from questioning the validity of the probate court sale.

The court's judgment found that the defendant was the owner of an undivided one-half interest in tracts 1 and 2 and all of tract 3, as the tracts were numbered and described in the judgment. On the date of the deed to defendant. S. W. Page only had an undivided one-half interest in the first two tracts. He apparently had sole ownership of tract 3. The probate court only purported to sell an undivided one-half interest in these three tracts. Defendant's ratification of this sale should only bar him

from claiming title to the interest sold by the probate court. We find that defendant's accepting the proceeds of the sale bars him from claiming any interest in tracts 1 and 2 as the one-half interest he claimed was sold by the administrator. Defendant's former sole interest in tract 3, due to this ratification, becomes a one-half interest.

As plaintiff is seeking to divest defendant of all title to the real estate in question, we shall proceed to rule on her remaining points. The last point specified in appellant's initial brief is that, if the trial court was correct in upholding the validity of the defendant's title, it erred in failing to require the return of the entire purchase price paid by plaintiff together with all real estate taxes paid and improvements placed on the property with interest. There was no evidence as to improvements nor as to the amount of taxes paid. Moreover, this point is rendered moot in view of our ruling that plaintiff receives the title the estate thought it was conveying. Point III is denied.

In her reply brief plaintiff claims that by reason of certain conduct defendant was guilty of laches, which bars his claim to the property. This point was not raised in appellant's initial brief. A claim of error first set forth in a reply brief does not present an issue for appellate review. *Application of Gilbert,* 563 S.W.2d 768, 771 (Mo. banc 1978). This claim of error is not before us.

The judgment is reversed and remanded for the entry of a judgment declaring that plaintiff is the owner of tracts 1 and 2 as the tracts are numbered and described in the judgment appealed from and that defendant has no interest therein and that plaintiff and defendant each own an undivided one-half interest in tract 3 as numbered and described in the said judgment. The new judgment should not contain any obligation on defendant's part to pay to plaintiff the amounts received by defendant from the estate of S. W. Page.

All concur, except BILLINGS, J., recused.