CYNTHIA G. HECTOR et al., Appellants, v. J. T. WARREN and R. L. WARREN.

**In Banc, February 2, 1910.**

1. **PARTITION: Sale not Approved: Acceptance of Proceeds: Estoppel: Ratification.** The coparceners who accepted the proceeds of a sale in partition not approved by the court, under such circumstances that they must be held to have known that the proceeds arose from the sale of their lands, thereby elected to affirm the sale and are estopped to question its validity.

*Held,* by **VALLIANT, C. J.**, dissenting:

*First*, that estoppel and ratification stand on different grounds, although they have some essentials in common, among which is the requirement that the party sought to be charged with ratification acted with full knowledge. Estoppel proceeds upon the idea that the party's conduct has been such as to induce his adversary to take certain action on the faith of it and it would work injury to his adversary if the party were now allowed to show that the facts on which his adversary was thus induced to rely were not true: if the party was in a position where he could have known or did know that his act might mislead his adversary to his disadvantage, then it was his duty to inquire before acting, and if he acted without making the inquiry and thereby misled his adversary he might be estopped, but that would not be a ratification. Ratification means that the party with his eyes open adopts and gives sanction to an act done in his name which, without his sanction, would not be binding upon him, and it may be implied from circumstances, as, for example, when he, with full knowledge of a sale in partition and that it was not binding upon him, chooses to adopt the unauthorized act and accepts its proceeds; but if he does not know these facts his act is not a ratification.

*Second.* One of the heirs sold his interest in the land, and his grantee brought suit in partition by order of publication against the other non-resident owners who had also mortgaged the land to secure the debt of that heir, and at the sheriff's sale the mortgagee was the purchaser, and is the defendant in this suit to have that sale set aside on the ground that the report of sale was never approved. *Held,* that, the non-resident owners did not ratify the sale by accepting from the sheriff the proceeds of the sale unless they had actual knowledge that there was a partition suit and sale, and that the lands in suit were those sold, nor if they actually believed the remittances grew out of a foreclosure of the mortgage; and the evi-

dence failing to show they had such knowledge, but showing defendant has derived more from the use of the lands than the improvements cost, they should be permitted to recover upon a return of the money received by them.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*Shepard & Shepard* and *McKay & Corbett* for appellants.

(1) The doctrine of estoppel does not apply in this case, for the reason that the plaintiffs, as they received the money, had no knowledge of the fact that the money they received was for the sale of the land in question. There is no such thing known to the law as a party being estopped from his actions in a matter wherein he has not full knowledge of the facts in connection therewith. Scrutchfield v. Sauter, 119 Mo. 623; Blodgett v. Perry, 97 Mo. 272; Burke v. Adams, 88 Mo. 513; Freeland v. Williamson, 220 Mo. 217. There can be no estoppel by ratification unless the party sought to be estopped have full knowledge of the matters which he is said to have ratified. Smith v. Jefferson Bank, 120 Mo. App. 527; St. Louis Gunning Advt. v. Wannamaker, 115 Mo. App. 270; Phillips v. Butler Co., 187 Mo. 698; Beland v. Anheuser-Busch Brewing Co., 157 Mo. 593; Garesche v. Levering Inv. Co., 146 Mo. 436; Hartmann v. Hornsby, 142 Mo. 368. (2) The sale made by the sheriff of the land in question in partition proceedings was not approved by the Pemiscot Circuit Court; therefore, the deed made by the sheriff for the lands in question was without authority and absolutely void, and the court should have so held. Clark v. Sires, 124 Mo. 12.

*Ward & Collins* for respondents.

With all the facts, circumstances, receipts, letters, checks, etc., the court was well warranted in holding that the appellants had knowledge sufficient to bind them. They are estopped by ratification, because they did have full knowledge of the matters which they are said to have ratified. Pentz v. Kuester, 41 Mo. 447; Pockman v. Meatt, 49 Mo. 345. "A party in interest in a partition suit who receives the proceeds of his share of the land sold in such proceedings will be estopped to impeach its validity, though such partition proceedings were void for error therein." Fischer v. Siekman, 125 Mo. 165; Pockman v. Meatt, 49 Mo. 345; Cochran v. Thomas, 131 Mo. 258; State ex rel. v. Moore, 18 Mo. App. 406; McClanahan v. West, 100 Mo. 309. The acquiescence of the adverse claimants is entitled to great weight against him. Green et al. v. Yarnall, 6 Mo. 326. The heirs or devisees who share in the proceeds of a sale by an administrator and receipt him for their shares thus obtained are estopped from asserting title thereto. Medis v. Kenny, 176 Mo. 200; Cadematori v. Gauger, 160 Mo. 352. So also land sold under execution. Austin v. Loring, 63 Mo. 19; Hartsman v. Hornsby, 142 Mo. 376. Appellants were possessed of such facts as to put them upon inquiry concerning the sale of this land and their ignorance (if they were ignorant) was the result of gross negligence or culpable negligence and they cannot be excused thereby. 11 Am. & Eng. Ency. Law (2 Ed.), p. 433.

LAMM, J.—This case is twin to Hector et al. v. Mann, *ante*, p. 228, handed down at this delivery. Plaintiffs here were plaintiffs there. There the Mann brothers bought 185 acres of land at a partition sale in case pending in the Pemiscot Circuit Court entitled

Riley v. Hector et al. Here the Warrens at the same sale bought 164.85 acres, viz.: lots 1, 4, 6, 7 and 8 in section 19, township 20, range 12, in Pemiscot county, Missouri, on a bid of $110, and received a sheriff's deed; paying all the land was worth. This land was not affected by the deed of trust given the Manns, mentioned in the Mann case. Such question is, therefore, out of this case. Presently, after their purchase the Warrens went into possession, reclaimed some of the land from swamp and marsh, fenced it and it is now worth many times more than when knocked down by the sheriff at public vendue.

Barring said mortgage, the pleadings and facts in this case differ in no essential particular from those in the Mann case. The court below found for defendants. Plaintiffs appeal. The errors assigned here are the same errors assigned in the Mann case. In fact, the two cases were heard together, *nisi,* and the evidence in the Mann case was read into the record in this. Hence, that case should be read with this.

On the Mann record we held that plaintiffs, by accepting the proceeds of the sale in partition and retaining the same under such circumstances that they must be held to know that those proceeds arose from a partition sale, thereby elected to affirm the sale and were estopped to question it. Moreover, it was ruled that no reversible error was committed. Such rulings dispose of this case and there is no use to reformulate questions there under exposition or restate conclusions so freshly and fully resolved and ruled.

Accordingly, the judgment is affirmed. All concur except *Valliant, C. J.,* who dissents in an opinion filed.

### DISSENTING OPINION.

VALLIANT, C. J.—I am unable to concur in the conclusion that the plaintiffs are estopped to assert their title to the land or that they ratified the sale in

the partition suit or that they have been guilty of such laches as to close the doors of an equity court against them. Estoppel is a doctrine that had its origin in equity jurisprudence and when it is applied to forbid one asserting title to his own land the circumstances ought to show very clearly that he has been guilty of such conduct as would render it unjust to the person who has relied on and been misled to his disadvantage by such conduct. I am unable to see anything in the evidence in this case that would justify the application of estoppel to these plaintiffs. I see nothing in the conduct of the defendants that particularly appeals to a court of conscience for their protection against the cold law of the case. They bought the land for a small sum at a sheriff's sale and if that sale was valid it is their land by law; if it was not valid the title is still in the plaintiffs. Defendants have already reaped off it more than they have expended and if they lose now they will lose not what has been added to the value of the land by their own skill or industry but simply the increased value of the land owing to the general development of the country, what is sometimes called the unearned increment. The small amount of money which the plaintiffs received and which they testify they received supposing it was the surplus coming to them on the foreclosure of a mortgage, after paying the mortgage debt, they offer to return, and even if they did not so offer the court in its decree would require them to return.

To prove the alleged estoppel the defendants introduced evidence as follows:

One of the defendants testified that when he and his brother bought the land at sheriff's sale it was all wild land, since then they have cleared and put in condition fit for cultivation about 20 acres, it is worth $12 to $15 an acre to clear it and put it in cultivation, they put about $150 or $200 worth of fencing on the land, but have not put any house on it, the land is worth now

twenty times as much as it was when they bought it, the price they paid for it at the sheriff's sale was its reasonable value at that time, they had sold timber off the land to the amount of about $500, the use they have had of the land would be a little more than pay for placing it in cultivation and the timber would more than pay for the taxes and cost of fencing; so far they have not lost anything in the transaction; they are not acquainted with the plaintiffs: ''I have never seen them (the plaintiffs) since I have owned the land. They have never been in my part of the country that I know of, I don't know what opportunity they had to lay claim to the land. I do not know where they live now. I don't know anything about them except from the records and the evidence produced. None of these people were present at the time this land was sold, so far as I know. I never notified them; I bought this land because I thought it was the officer's duty that sold it. I do not know whether they knew this land was sold.''

The ex-sheriff testified to the effect as follows: ''He was sheriff from 1893 to 1897, during his term of office he sold some land under a judgment in a partition suit between Wm. Riley, plaintiff, and Cynthia G. Hector, Carrie G. Frazier, James Frazier, her husband, and Watson L. Stewart, defendants, and he distributed the money he received from the sale to the defendants in that suit. He sent the checks for the several shares in a letter to each of them, inclosing a receipt for each to sign which each did and he had the receipts present in court to produce. He was not sure whether he wrote a letter to each one or inclosed all the checks and receipts in one letter to Mrs. Hector, but thinks he wrote a letter to each; there were two partition suits between the same parties and he made two sales and sent the money to the parties entitled, he has no receipts for the money he sent them for the first sale but these receipts are for the last

sale; he has no copy of the letter or letters he wrote, and does not know what he said in the letters, but thinks he told them what the checks were for, did not go into any detail report because he guessed if they wanted to know they would ask some questions. A type-written and type-signed letter was shown him and he was asked if it was a copy of the letters he sent to the parties, but he was not prepared to say that it was a copy although it was about such a letter as he would have written; he made two sales and two reports of sales, and two remittances; he has here checks which he sent for the proceeds of the first sale dated December 28, 1895, they are not for any money received for the sale of the land in question; if the typewritten letter mentioned is not a copy of the letter he wrote to Mrs. Hector it is just such a letter as he would have written; he has no recollection of having written her a letter explaining any more fully how the money was derived than is shown in that letter, it is something like the one he wrote her; none of the letters he wrote gave any description of the land. Receipts were then introduced dated from the office of the sheriff, August 18th, 1898, one for $31.85 signed by Mrs. Hector, one for $172.13 by W. L. Stewart, one for $55.73 by Mrs. Frazier, all reciting "being amount in full due me from distribution of funds derived from the sale of certain real estate sold for partition on the 9th day of February, 1897, under an order issued by the Circuit Court of Pemiscot county, Missouri, in the case of William Riley v. Cynthia G. Hector et al.''

Plaintiffs introduced the typewritten letter in evidence as follows:

"Gayoso, Mo., Aug. 19, 189—.

"Mrs. Carrie Frazier, Pine Bluff, Ark.

"Dear Madam: Herewith I enclose you check for your interest in the Goah Stewart estate less your in-

terest in the 'Long Field,' which was decreed to go to Mann Bros. The synopsis of the matter is as follows, to-wit:

| | |
|---|---|
| Gross proceeds | $768.93 |
| Total expense | 154.13 |
| | |
| Net proceeds | 614.80 |
| Mrs. Hector's dowry deducted | 98.40 |
| | |
| Am't to be divided among three heirs.... | 516.40 |
| 1-3 of your share of the whole | 172.13 |
| Your interest in Long Field which Mann Bros. got | 116.40 |
| | |
| Your interest in balance of the estate ... | 55.73 |

"I suppose that you understand that this is the proceeds of the balance of the Stewart land, which was sold in February term of our circuit court in '97, and that Mann Bros. were subrogated to your interest in the Long Field on account of a trust deed signed by you to them.

"I send you duplicate receipts to sign as I need one receipt to keep and one to file in court. Please sign and return them as soon as suits your convenience, and oblige.

"Yours respectfully,
"J. H. McFARLAND.

"I just collected this a few days since is the reason it has not been sent ere now."

The ex-sheriff was recalled and testified as follows:

"Q. I will ask you, Mr. McFarland, if these receipts which have been identified by you and read to the court were for the proceeds derived from the sale of the land in the case of William Riley v. Cynthia G. Hector, Carrie G. Frazier, James Frazier, her hus-

band, and Watson L. Stewart, a minor? A. I am
of the opinion as to Mrs. Hector and Mrs. Frazier that
would have been their land in question went to Mr.
Mann by reason of him having a mortgage for their
interests. I say that is my recollection now. I don't
believe they got possibly an interest in that. That is
what I paid Mr. Mann for, what was their interest.

"Court: Where did this money come from you
paid Mrs. Frazier? A. At the same time this land
was sold other lands were sold and that is the proceeds
in the other land.

"Q. Then your answer would be as to Mrs. Fraz-
ier and Mrs. Hector that the money they received was
derived from the sale of the land in the partition suit
of William Riley vs. Cynthia G. Hector, James Frazier
and Carrie Frazier, his wife, and Watson L. Stewart,
with the exception of what is known as Long Field
proceeds? A. Yes, sir; that is the way I understand
it; as to Mr. Stewart I suppose he got his interest in
the Long Field.

"Re-Cross-Examination: As I suggested a while
ago I am of the opinion that Mrs. Frazier and Mrs.
Hector had given to Mr. Mann a mortgage and for that
reason did not get any of this proceeds. I believe I
tried to explain that fact in their letter. I got the idea
from somebody or somewhere that Watson L. Stewart
signed the same mortgage, but as he was a minor
his interest didn't pass and I was directed to send him
his proceeds and I did so."

The plaintiffs testified that they never had any
notice or information that a partition suit had been
instituted or was pending until about two years after
the land had been sold and then they immediately re-
quested their attorneys to bring suit to the land. Mrs.
Hector and Mrs. Frazier testified that they received
each a small amount of money from the sheriff but
they supposed it resulted from the sale of some land
they had mortgaged to Mann Bros. W. L. Stewart

testified that he never received "any money arising from the sale of these lands in partition."

There was a judgment for defendants from which judgment the plaintiffs have appealed.

I. The record shows that Goah W. Stewart, now deceased, was the common source of title, that the plaintiffs are his widow and heirs at law and are the owners of the land in question if the title has not passed out of them into the defendants by reason of the facts stated in defendants' answer. Defendants plead title under the decree in the partition and the sheriff's deed executed as in conformity thereto, and also by virtue of certain acts of plaintiffs which defendants say estop them from asserting title. Let us first consider the plea of estoppel.

This court has in many cases defined estoppel *in pais* and has specified the elements that must appear in the acts to constitute it. In Burke v. Adams, 80 Mo. 504, 1. c. 514, it was said: "It is also necessary to an estoppel *in pais* that the party should at the time be apprised of his rights. . . . . The act must have been done with the intention that the other should act upon it and the other party must have been induced thereby to act, to change his relation to the subject-matter and to his injury, were the party allowed to assert the contrary." The evidence introduced by defendants to show that these plaintiffs knew what their rights were when they accepted the small sums of money that the sheriff sent them was very meagre. And the testimony of one of the defendants, who spoke for both, showed that they knew nothing about the plaintiffs or their acts, and that they were not influenced in their conduct in relation to the property by any act of the plaintiffs and his evidence further shows that he and his brother have already reaped from the land more than they have expended in purchase and improvements. Defendants have not trusted and have not been misled

to their injury by any act of the plaintiffs and accord-
ing to their own testimony if they should now lose the
land they would still be the gainer in their venture.
There was no evidence that they had ever heard that
the sheriff had sent the money to plaintiffs or that
plaintiffs had received it, they were not misled by that
fact. Defendants have made out no case of estoppel
against the plaintiffs. But defendants now say in their
brief, what they did not plead in their answer, that is,
that by receiving the money these plaintiffs ratified the
sheriff's sale. Estoppel and ratification stand on dif-
ferent grounds, although they have some essentials in
common, among which is the requirement that the
party sought to be charged with ratification acted with
full knowledge. "If with full knowledge of all the
facts a person ratify an agreement which another per-
son has improperly made concerning the property of
the person ratifying it, he thereby makes himself a
party to it. He is in precisely the same position in
this respect as if the original agreement had been made
with him." [9 Cyc. 387.] He must be as well in-
formed as to what the contract was as was the person
who made it, in this instance these people must have
known as much about it as the sheriff. But just at
this point we must be careful to distinguish between
an estoppel and a ratification; if the party is in a
position where he could have known and where he knew
that his act might mislead some one to his disadvantage,
then it was his duty to inquire before acting, and if he
acted without making the inquiry and thereby misled
his adversary he might be estopped, but that would
not be a ratification. Estoppel proceeds on the idea
that the party's conduct has been such as to induce
his adversary to take certain action on the faith of it
and it would work injury to his adversary if the party
were now allowed to show that the facts on which
his adversary was thus induced to rely were not true,
although they were in fact not true. But that element

of fraud does not enter into ratification. Ratification means that a man with his eyes open adopts and gives sanction to an act done in his name which, without his sanction, would not be binding on him, and as a contract itself may be implied from circumstances so ratification may be implied, as for example when a party with full knowledge of a sale and knowledge that it was not binding on him unless he chose to adopt the unauthorized act, accepts the proceeds. One cannot be said to have voluntarily ratified an act unless he knew that he was as free to repudiate it as he was to approve it; if he labored under the belief that it was binding on him against his will his act cannot be called ratification. If therefore these parties knew or were informed when they received the money sent them by the sheriff that it was the proceeds of this land sold under a decree of court for partition and knew that there was such a defect in the record that the sale without their ratification was not binding on them and so knowing or being informed accepted the money, they ratified the sale, and it was binding on them, the same as if they had themselves sold the land to these defendants for that much money. As was said by this court in Pockman v. Meatt, 49 Mo. 345, l. c. 349: "In proceedings in partition the sale is by the act of the parties themselves as well as by a judgment. . . . Hence an acquiescence in the judgment, either by petitioners or respondents, by voluntarily receiving the proceeds, is such an affirmance as waives a right to ask for its reversal. It is, indeed, a voluntary satisfaction, and places it beyond the further control of the court." In that case there was no question but that the parties had appeared or had been duly summoned, there was no question of their having had full notice of the proceeding.

In Fischer v. Siekmann, 125 Mo. 165, to which we are referred, the plaintiff who sought to reclaim his interest in land sold in a partition suit in which he

was a party defendant, was a minor and had not been properly served with process, although the court had proceeded to appoint a guardian *ad litem* and had rendered judgment as if he had been properly brought in. But on the trial of the case the record of the probate court showed that after he came of age he received from his guardian his full share of the proceeds of the sale in partition, and acknowledged the same in open court; on the trial he denied that he had received the money, but this court said that his single oath after the death of his guardian could not outweigh the solemn court record. In that case there was no question but that he knew what it was for. There is no use reviewing other cases cited by the learned counsel, because no one disputes the proposition that even though the sale by the sheriff should be found to be invalid, still, if these plaintiffs, knowing that the money they received from the sheriff was the proceeds of the sale of the land in question sold under a decree in partition in which they were parties, accepted the money they are to be adjudged as having ratified the sale and are not entitled to the land.

Did they have that knowledge? We start with the fact that the record in the partition suit does not show any personal service, it shows only constructive notice. Notice by publication to a non-resident is a process to which the law is driven by necessity. If the party is a non-resident and the order of publication is properly made and properly published and due proof thereof made, the law conclusively presumes notice to the nonresident and will not listen to evidence to the contrary. But that presumption only goes so far as to sustain the jurisdiction of the court in its proceedings in that case; it does not follow the non-resident in his after conduct in reference to the subject of the suit and attach to him a fictitious notice of the court's proceedings. Before the doctrine of estoppel or ratification in reference to the court proceedings can be applied to

his subsequent conduct based on the theory of his knowledge of those proceedings, it must be shown that he had actual knowledge.

Now what knowledge did these plaintiffs have of the facts on which the charge of ratification is based? They testify that they had no such knowledge, they knew that they had given a mortgage on some of their land to Mann Brothers and they supposed the money came from a sale under that mortgage. Bear in mind that they were women, at least two of them were. What lawyer of experience will say that a woman, however intelligent she may be, is as familiar with law terms as a man who has been accustomed to observing court proceedings? They testify positively that they never heard of the partition suit until two years after the land had been sold, and their testimony is not disputed by a court record, nor was the oral testimony criticized, as in the case of Fischer v. Siekmann above mentioned; the only evidence to gainsay what they said is the testimony of the ex-sheriff and the receipts which he produced. All the information that they derived as to the source of the money was from the ex-sheriff, and he said himself that he did not inform them what land had been sold or under what proceeding, he said he gave them no details, presuming that if they wanted information they would ask questions. The typewritten letter said nothing about a partition suit nor did it mention any particular land, except the "Long Field," the proceeds of which it said Mann Bros. got. Mann Bros. was the firm to whom the mortgage was given, and there was sufficient mention of Mann Bros.' participation in the matter in the sheriff's letter to justify an inexperienced woman in inferring, as these women say they did infer, that the money they received was from a sale under that mortgage. We are not now talking about what they ought to have known, but what they did know, not what they ought to have inferred but what they did

infer. It does not clearly appear that the ex-sheriff himself knew that the land in this suit was the land which brought the money he sent to the plaintiffs. The sale was made, according to the recital in the deed, February 9, 1897, but it was not until a year and a half thereafter that he sent the money. He said: "I made two sales of this Stewart land. I think I made two reports of sale, one for the first and one for the last. I also made two remittances, I have the checks here I sent for the proceeds of the first sale, and these checks are dated December 28, 1895, and seem to have been here by the bank January 9th, 1896. The checks I now have in my hand are not for any money received for the sale of the land in question. . . . I paid Dave Mann out of this partition sale $182.95." The witness also said: "There had been a previous sale of some more lands in partition in which these parties were interested. There were two suits both of them being William Riley, plaintiff, vs. Cynthia G. Hector et al., defendants." Respondents in their brief controvert the statement that there were two suits and imply that the ex-sheriff was mistaken. There is no doubtful meaning to what he said on that subject and he was their own witness and the only witness by whom they seek to prove knowledge to bind the defendants. If he was liable to have been mistaken about as important a fact as that, can we say that he was not mistaken in other particulars? But the receipts in evidence do say "being the amount in full due me from the sale of certain real estate sold for partition on the 19th day of February, 1897, under an order issued by the circuit court of Pemiscot county, Missouri, in the case of William Riley vs. Cynthia G. Hector et al." From that recital it is contended that they had full knowledge of the whole transaction, knowledge of such a character that would make the receipt of the money such an approval that would put them precisely in the

same position as if they had made the sale themselves. Granting for sake of the argument that the recital is evidence of that fact, still a receipt is only prima-facie evidence, while all the other evidence in this case shows that they did not know. Those receipts were written by the sheriff and sent to them to sign. There is no evidence that these defendants ever saw or heard of those receipts or based any action on them, their own evidence is to the contrary. The evidence for the defendants shows that there were two partition suits, between the same parties, two reports of sale and two remittances, their witness testified that the remittances for which the receipts were shown were for the land now in suit, but he does not say that he so informed the plaintiffs and there is nothing either in the letters or the receipts to indicate what land the remittance was for. The letter says it was for land sold during the February term, 1897, of the circuit court, and the receipt recites that it was for land sold February 19, 1897; that information might have put the parties on the inquiry which would have led to knowledge of the fact, but the question now is not what they might have known if they had pursued the inquiry but what did they know. In my judgment the evidence does not show that the plaintiffs when they received the money had such knowledge of the transaction as to amount to a voluntary ratification of the sale. Of course they cannot keep the money, if they recover the land, but the court can take care of that point in its decree even if the plaintiffs had not offered, as they have in their petition, to refund the money.

Defendants also insist that the plaintiffs have been guilty of such laches as will bar their suit. The law of laches is an equitable doctrine and is applied when there are equities that would suffer by the delay if the rule was not applied. But there is nothing in the facts of this case that would bar the plaintiffs on that ground. Their testimony is that they did not

learn of the partition suit until two years after their land had been sold, and then they immediately sought the advice of counsel and instructed them to bring suit. It seems that suit was not brought until 1905, but defendants have suffered nothing by the delay, no equities have intervened. In their brief they say that plaintiffs have waited until respondents have reclaimed the land from a marsh and swamp and made a valuable farm of it. If it was a swamp and has been reclaimed there is nothing in the evidence to show that the respondents caused the drainage, we know that our law provides for a system of public drainage and we also know that that system is in operation in many parts of this State. The only improvements they have made, according to the evidence, is building a fence and clearing twenty acres, of which we have already spoken; the increment otherwise must have come from waiting.

There are no particular equities in the case to bend the law to the one side or the other; the defendants bought about one hundred and sixty acres of land for $110, they have spent $150 to $200 in fencing, and have cleared twenty acres, they have sold off the place $500 worth of timber and received in rents and profits more than enough to pay for the improvements and taxes; if the title they got at the sheriff's sale is valid it is their land by the cold measure of the law, if not valid it is the plaintiffs' land by the same measure.