MINERVA McELVAIN ROACH, RALPH McELVAIN, CLYDE T. McELVAIN, HERBERT RAYMOND McELVAIN, J. WILLIAM McELVAIN, MARTHA McELVAIN HUNT, JERRY McELVAIN, and JOSEPHINE TURNAGE, Appellants, v. HAIMON KOHN, JULIUS M. KOHN, JOSEPH M. KOHN, ELLIS KOHN, and LOUIS A. KOHN, Respondents, No. 41792—235 S. W. (2d) 284.

Division One, January 8, 1951.

*N. C. Hawkins* and *Edward F. Sharp* for appellants.

*Von Mayes* and *Ward & Reeves* for respondents.

[285] CONKLING, P. J.—The plaintiffs-appellants (hereinafter called plaintiffs) appealed from the trial court's decree wherein defendants were held to be the fee simple owners of certain described lands in Pemiscot County, Missouri. Plaintiffs' instant petition is an equity action to quiet title and determine interest in and to the 120 acres therein described and prayed the trial court's decree that they (plaintiffs) were the fee simple owners of said real estate.

One J. M. McElvain died on December 20, 1924. His will was probated in Pemiscot County on December 24, 1924. Testator was survived by his widow, Margaret Ann McElvain (since deceased) and his children, Minerva McElvain Burnett, Ralph McElvain and Clyde T. McElvain, Sr., (now deceased); and also by two grandchildren, William McElvain and Martha McElvain. The last named son of testator (Clyde T. McElvain, Sr.) was living at the time of the hereinafter set out events affecting title to the land in issue here. Clyde McElvain, Sr. was survived by his children, the plaintiffs Clyde T. McElvain, Jr., Herbert Raymond McElvain, Jerry McElvain and Josephine Turnage.

Under the will of J. M. McElvain, this 120 acres and certain other lands, were by him conveyed to Citizens Trust Company, of Caruthersville, Missouri, in trust, as trustee for the use and benefit of his children and grandchildren. That Trust Company took charge of all those lands and administered them as trustee until August 24, 1928, when an order of the Circuit Court permitted it to resign as such trustee. By order of the court W. E. Goetcher was immediately and on August 24, 1928 appointed as successor trustee. On March 10, 1930, the Citizens Trust Company was placed in the hands of the State Finance Commissioner for liquidation. Mr. Goetcher, upon his appointment, took possession and, until April 11, 1930, handled all the lands as trustee under the McElvain will. On March 19, 1930 the St. Francis Levee District of Missouri, as plaintiff, had judgment in an action for unpaid 1929 levee taxes on all the McElvain lands theretofore conveyed in trust. Under a special execution those lands were all sold and conveyed to one B. B. Sanders on April 11, 1930. The deed to Sanders, under the execution in the tax suit, was made by W. P. Robertson, Sheriff of Pemiscot County. The defendants in that tax suit were Citizens Trust Company, W. E. Goetcher, trustee under the will of J. M. McElvain, and all of the individual heirs of J. M. McElvain. The minor defendants in the tax suit answered by their duly appointed guardian ad litem. All the other defendants in that tax suit by their counsel filed answer and offered judgment for the taxes due.

Thereafter, B. B. Sanders made various separate conveyances of the McElvain lands (conveyed to him by the sheriff's deed after the tax sale) to the various heirs of J. M. McElvain who were beneficiaries under the above will. The 120 acres in issue here were separately conveyed by Sanders to Chester M. Burnett, a son of plaintiff Minerva McElvain Burnett (now the plaintiff Minerva McElvain Roach). The latter then went into possession of this 120 acres and remained in possession until December 7, 1937. In 1934 this 120 acres was also sold for delinquent state and county taxes, but was later redeemed. December 7, 1937 plaintiff Minerva Burnett and her son, Chester M. Burnett and his wife, and others, executed a warranty deed to this 120 acres to defendants for $5700.00. The instant defendants then went into possession of this 120 acres and have since continued in possession, farming the land and paying the taxes.

Briefly stated, the instant petition alleges the relationship of the parties; the execution and probate of the J. M. McElvain will; that plaintiffs are the surviving beneficiaries of the trust created by the J. M. McElvain will and are the owners of the 120 [286] acres in issue here; that defendants claim an interest in the 120 acres of a nature unknown to plaintiffs except that defendants' claim is based upon the above mentioned deed of December 7, 1937 to defendants; that defendants had notice by the recording of the J. M. McElvain

will that grantors in that deed of December 7, 1937 had no authority to convey because of the trust created by that will. The petition prayed that the title be determined, that plaintiffs be adjudged to be "the fee simple owners" and that defendants be adjudged to have no "right, title or interest" in or to said 120 acres. The instant petition alleged no fraud and made no attack upon the administration of the trustee, the 1930 tax suit, or the decree therein.

Defendants' instant answer admitted that they claimed an interest in the 120 acres; alleged that by the deed of December 7, 1937 they were the fee simple record owners thereof; denied plaintiffs had any interest therein; alleged that for more than 10 years before plaintiffs' petition was filed defendants had been in the actual, open, notorious, adverse, peaceful and continuous possession of the 120 acres and that any claim by plaintiffs thereto was barred by limitation; and prayed that title be quieted in the defendants.

In the "allegations of error" in plaintiffs' brief it is stated generally that the trial chancellor's decree should have been for plaintiffs; that the decree was against the law and the evidence, and was not supported by substantial evidence. No authorities are there cited. Plaintiffs' statement in their brief of their "Points Relied On" are but abstract propositions of law, with no attempt to apply them to the case before us and no attempt to specifically point out any claimed error relied on for reversal of the instant decree. The brief does not comply with our Rule 1.08(a)(3), but we nevertheless consider the appeal upon the merits. In the written "Argument" in their brief plaintiffs have gone far afield to discuss some matters which neither by the pleadings, the evidence, the decree nor the brief are properly before us for consideration and ruling, but we cannot separately discuss all those collateral matters in this opinion.

The plaintiffs in this case are the now living heirs of J. M. McElvain, the testator. During the depression year of 1929 the taxes were not paid on the lands J. M. McElvain had owned, and in 1930 the above mentioned tax suit was filed and reduced to judgment. Under special execution all the lands were sold and conveyed by the sheriff to one B. B. Sanders. Thereafter Sanders executed various separate conveyances transferring title to those various tracts (of the original McElvain lands) to the separate McElvain heirs. The 120 acres in issue in the instant case were then conveyed by Sanders to Chester M. Burnett, son of Minerva Burnett. Minerva then moved onto this 120 acres, lived thereon and farmed this 120 acres until December 7, 1937, when she, her son Chester and his wife, and others, sold and by their deed transferred this 120 acres to defendants for $5700.00.

But, in this action to determine title, Minerva (and the other McElvain heirs) now seek to repudiate Minerva's deed of December 7, 1937, by which Minerva, her son and others, conveyed this 120

acres to defendants. Minerva (and the other plaintiff McElvain heirs) now contend not only that Minerva and her son had no authority to execute their deed of December 7, 1937, but plaintiffs also now contend that in 1930 the McElvain heirs successfully conspired "to break the trust (created by their father) and distribute the estate to these improvident heirs by the device of willfully refusing to pay the taxes conspiring to have the tax suits and tax sales." Plaintiffs state that was what they were "deliberately attempting to do * * · * that is exactly what was attempted to be done here, trying to bust this trust by means of a tax suit." They further contend (our above and following quotations are from plaintiffs' brief) that such a scheme "even if consented to and participated in by all the beneficiaries of the trust, cannot accomplish the purpose of breaking the trust." That is strange [287] doctrine and is a novel contention to make to a court of equity.

While no fraud is charged and while neither the administration of the trustee nor the tax suit is attacked in this petition, in the written argument in plaintiffs' brief we are cited to such cases as Duffley v. McCaskey, 345 Mo. 550, 134 S. W. (2d) 62, State ex rel. Baumann v. Marburger, 353 Mo. 187, 182 S. W. (2d) 163, McCune v. Goodwillie, 204 Mo. 306, 102 S. W. 997 and Lewis v. Barnes, 272 Mo. 377, 199 S. W. 212. The rule of those cases upon which plaintiffs here rely is that "the purchase at a tax sale *by one who has the duty or obligation to pay the taxes* is not a purchase in the sense that the title is transferred by such sale, but is merely a payment of the taxes, and leaves the title vested as if payment had been made before the sale." (Emphasis ours.) But that rule of those cases cannot be applied here. In this case the purchaser at the tax sale was Sanders. Under this record, he was a stranger to the title. He was neither trustee of the trust nor a beneficiary under the McElvain will. There had been no duty on Sanders to pay the delinquent taxes.

Likewise, in plaintiffs' written argument, authority is cited to the effect that purchase of property *from a trustee* with notice of the trust conveys no title; and that in a direct attack upon a tax sale the court will receive evidence as to and consider the adequacy of the consideration paid for the property upon such tax sale. It is also there said by plaintiffs that at the 1930 tax sale the various lands were not offered in separate parcels. For obvious reasons those matters are not here determinative. And those (and other contentions made in plaintiffs' written argument) are not before us for ruling. Upon their mere statement, it is seen from what we have said above that they are not determinative here and are not issues in this action to quiet title.

The evidence in the record before us establishes that defendants have title to the 120 acres in controversy here. The trial court correctly so found and quieted title thereto in the defendants. In the

1930 tax suit the trustee, in whom the legal title to all these McElvain lands then reposed, and all the then beneficiaries of the above mentioned trust were made defendants. All were in court by their answers filed in the cause. They there had their day in court and their opportunity to contest. The circuit court of Pemiscot County had jurisdiction of both the parties and the subject matter of the action. That judgment is in proper form. No irregularity appears in that proceeding. No fraud (extrinsic or intrinsic) is alleged or proved. That judgment is not attacked. We hold that judgment to be res judicata. The sale under the special execution in that case was to one a total stranger to the title. Sale of this 120 acres was made by Sanders to one of the McElvain heirs, who seven years later sold to defendants. We cannot see how the chancellor could possibly have reached any other conclusion. Drainage Dist. No. 1 Reformed of Stoddard County, Missouri, et al. v. Matthews, et al., 361 Mo. 286, 234 S. W. (2d) 567, Rothenberger v. Garrett, 224 Mo. 191, 123 S. W. 574, Paxton v. Fix, (Mo. Sup.) 190 S. W. 328.

█ Another equally convincing and potent reason for the chancellor's conclusion appears. While in 1930, prior to the judgment in the tax case, the McElvain heirs (as beneficiaries of the trust) had the right to pay the delinquent taxes, they sat by and let the tax suit go to judgment. They say in their brief that they did that "deliberately." Beneficiaries of a trust may protect the trust res by payment of taxes, but these plaintiffs also permitted the period of redemption to pass without action to redeem. Separately, they thereafter purchased separate parcels of those McElvain lands from Sanders. The title to this 120 acres in issue was acquired by Minerva's son. Minerva moved onto this land and farmed it until December 7, 1937. Minerva and her son then sold this land to defendants. This record is silent as to which of the other plaintiffs, if any, have disposed of any of the original McElvain lands acquired from [288] Sanders. If those lands have not been sold, it may be assumed that the plaintiffs (the McElvain heirs) still have them and farm them, no doubt to their profit.

If those who are entitled to avoid a sale, with knowledge of all the circumstances, adopt and ratify it, will equity permit them to thereafter set such sale aside? Will the basic principles of equitable estoppel permit Minerva, and the other plaintiffs, to now successfully contend that Minerva and her son had no authority to execute the deed by which, on December 7, 1937, they sold this land to defendants for $5700.00? When a sale of land is made can the sellers have the money from the sale and, repudiating their deed, have also the land? The fundamental principles of equitable estoppel, which arise *here* from the undisputed facts themselves, compel a negative answer to those questions. The underlying reasons therefor must be too plain to require extended discussion. And this character of equitable

estoppel is equally as applicable to infants as to adults, and binds those who stand in privity or who were virtually represented. Lawson v. Cunningham, 275 Mo. 128, 204 S. W. 1100, 1108, Hubbard v. Slavens, 218 Mo. 598, 117 S. W. 1104, Hector v. Mann, 225 Mo. 228, 124 S. W. 1109, Hector v. Warren, 225 Mo. 255, 124 S. W. 1119, Boone v. Oetting, 342 Mo. 269, 114 S. W. (2d) 981, Cobb v. Massey, (Mo. Sup.) 160 S. W. (2d) 733, 31 C. J. S. Estoppel, p. 381, et seq., 397, et seq.

The basis of the rule is simple justice and good conscience. "Equity, as a code of conscience, takes cognizance of * * * delicate distinctions between right and wrong in human conduct." One obvious purpose of the application of the equitable estoppel rule is the prevention of subsequent inequitable assertions of title. Where the facts (as here) show that plaintiffs did not speak or act when they should have spoken or acted, and that plaintiffs fully acquiesced and accepted and used through these years the benefits of a sale they now contend was illegal, and where plaintiffs themselves here admit that they conspired, formulated and executed the scheme they now contend was illegal, are plaintiffs in any position to ask any relief as to such facts from a court of equity? We must rule that they are not. More than twenty years ago these plaintiffs sat mute and permitted the tax suit to go to judgment. More than thirteen years ago Minerva and her son as grantors executed the deed under which defendants claim. And equity looks with little favor and examines with cautious scrutiny actions instituted many years after the events litigated have occurred.

Under our conclusions and rulings above stated it is unnecessary for us to consider the contentions made by the parties as to the statute of limitations. The decree of the chancellor is amply supported by the evidence in this case. Upon such evidence, and in deference to the learned chancellor's action, his decree must be and is affirmed. It is so ordered. All concur.